UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTRELLA ADELA JAVIER,
DANIELA JAVIER and
ESTATE OF WILBERT JAVIER PRADO,

    Plaintiffs,

v.                               Case No. 07-C-0204

CITY OF MILWAUKEE and
ESTATE OF ALFONZO C. GLOVER,

    Defendants.

**ORDER RE: MOTION TO DETERMINE ADMISSIBILITY OF INQUEST TESTIMONY
AND OTHER PRIOR STATEMENTS OF ALFONZO C. GLOVER**

**I. BACKGROUND**

This action was commenced on March 2, 2007, when the plaintiffs, Estrella Adela Javier, Daniela Javier, and the estate of Wilbert Javier Prado ("Prado"), filed a complaint naming the City of Milwaukee ("the City") and the estate of Alfonzo C. Glover ("Glover") as defendants. The allegations in the complaint find their genesis in the shooting of Prado by Glover on March 5, 2005. At that time, Glover was employed as a Milwaukee Police Officer. On June 19, 2007, the City filed a motion to stay any and all discovery with respect to the plaintiffs' claim against the City under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) until the completion of discovery regarding the plaintiffs' claims against Glover in his individual capacity and the resolution of any summary judgment motions relating to Glover's individual capacity liability. On September 17, 2007, the court granted the City's motion to stay discovery, and all discovery on the plaintiffs' *Monell* claim

was stayed until such time as discovery on the plaintiffs' claim against Glover in his individual capacity was complete and any motions for summary judgment relating thereto were resolved.

On April 17, 2008, the plaintiffs filed a motion to determine the admissibility of Glover's inquest testimony and Glover's prior statements. Whether Glover's inquest testimony and prior statements are deemed to be admissible is an important issue for the plaintiffs because Glover took his own life after he was charged criminally for shooting Prado and is, thus, unavailable as a witness. The plaintiffs' motion is now fully briefed and is ready for resolution.

The statements at issue include statements provided by Glover during interviews and in written reports that were generated as part of the Milwaukee Police Department, Internal Affairs Bureau's investigation into the shooting. Also at issue is Glover's testimony at an inquest proceeding that was conducted following the shooting. The plaintiffs describe the statements at issue as follows:

> [A]t 12:25 a.m. on March 6, 2005, essentially immediately following the shooting, Officer Glover was interviewed at the scene of the shooting by Milwaukee Police Department Lieutenant of Detectives Thomas Welch and Detectives Steven Caballero and David Chavez. A second interview of Officer Glover was conducted at the Police Administration Building at 6:10 a.m. on March 6, 2005. Present during this interview were Milwaukee Police Department Lieutenant of Detectives David Zibolski, Detectives Caballero and Chavez of the Milwaukee Police Department, as well as Milwaukee Police Association Union Attorneys Laura Eggert and Rachel Pings. Finally, following that interview, yet another interview was conducted, this time in the Captain's Office. Present at this, now third, interview were: Assistant Milwaukee County District Attorney Pat Kenney; DA Investigators Joseph Link and Thomas Kasper; Milwaukee Police Department Lieutenant Zibolski, Captain Timothy Burkee, Detective Caballero; as well as Milwaukee Police Association Union Attorneys Eggert and Pings.
>
> During these interviews, all attended by high-ranking employees of the Milwaukee Police Department, Officer Glover provided information regarding the shooting, including that he repeatedly identified himself to Prado, and others present, as a Milwaukee Police Officer. Similarly, approximately one month after the shooting, Officer Glover filed a report with the Milwaukee Police Department Lieutenant of Police Richard P. Oliva. In the report, Officer Glover stated in

2

> reference to the shooting on March 6, 2005, that he was "on duty" at the time of the shooting.
>
> The interviews occurred soon after the shooting, and in the presence of various Milwaukee Police Department Lieutenants and Detectives, as well as Milwaukee Police Association Union attorneys, a Milwaukee County District Attorney, and DA Investigators. During the interviews, Glover provided information regarding the shooting, including statements that he identified himself to Prado as a Milwaukee Police Officer. The written report was filed with a Milwaukee Police Department Lieutenant one month after the shooting, and Glover stated in the report that he was "on duty" at the time of the shooting.

(Pl's Br. at 5-6.)

The Inquest commenced on May 23, 2005, and lasted four days. During the Inquest, Glover testified that, at the time of the shooting, he considered himself to be acting as a Milwaukee Police Officer (although the shooting occurred after Glover's shift was over, i.e., while he was "off-duty"). Glover also testified that he identified himself as a Milwaukee Police Officer to Prado at the time of the shooting. The Inquest was open to the public, and was conducted by Milwaukee County Circuit Court Judge John Franke. Representatives of the City of Milwaukee and of Milwaukee County, parties involved in the shooting, and the media attended the proceeding. Glover testified under oath during the Inquest. He was employed as an officer of the Milwaukee Police Department at the time of the Inquest and, indeed, testified in full uniform. The Inquest jury returned a verdict finding the actions of Glover to be justified. However, after additional examination of physical evidence, the Milwaukee County District Attorney filed criminal charges on May 30, 2006 against Glover relating to the shooting of Prado. As previously stated, Glover committed suicide following the filing of the criminal charges.

3

## II. DISCUSSION

The plaintiffs argue that the prior statements and inquest testimony of Glover concerning the shooting of Prado are admissible. Specifically, the plaintiffs contend that Glover's prior statements and inquest testimony are admissible because: (1) they are not offered to prove the truth of the matters asserted, but rather are offered to show Glover's intent, motive, or purpose to serve his employer, i.e. the City, at the time of the shooting and (2) they are not hearsay, as they are party admissions under Fed. R. Evid. 801(d)(2)(D). Furthermore, they are admissible, pursuant to Fed. R. Evid. 807, under the residual hearsay exception.

After reviewing the parties' briefs, I am persuaded that Glover's prior statements and testimony constitute admissions by a party-opponent under Fed. R. Evid. 801(d)(2)(D) and are therefore admissible; moreover, the probative value of the statements and testimony is not substantially outweighed by the danger of unfair prejudice.

Fed. R. Evid. 801(d)(2)(D) states:

(d) Statements which are not hearsay. A statement is not hearsay if - -

. . .

(2) Admission by party-opponent. The statement is offered against a party and is . . . (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . .

Thus, in order for Glover's statements and testimony to be admissible under Fed. R. Evid. 801(d)(2)(D), they must be: (1) statements made and testimony given by Glover as an agent or servant of the city; (2) "concerning a matter within the scope" of Glover's employment with the City; and (3) made during the existence of his employment relationship with the City. The City does not dispute that, at the time of his statements and testimony, Glover was an employee of the City; nor

4

does the City dispute that the statements and testimony were given during the existence of the employment relationship.[1] However, the City argues that Glover's statements and testimony were not "concerning a matter within the scope" of his employment.

In determining whether a statement was made "concerning a matter within the scope" of the employment, "[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description." *Aliotta v. National Railroad Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003). The Advisory Committee Notes to Rule 801(d)(2)(D) support the broad view that the relevant question is whether the statement was related to a matter within the scope of employment, and not whether the statement was made by the employee acting in the scope of his employment:

> The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment. *Grayson v. Williams*, 256 F.2d 61 (10th Cir. 1958); *Koninklijke Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines v. Tuller*, 110 U.S.App.D.C. 282, 292 F.2d 775, 784 (1961); *Martin v. Savage Truck Lines, Inc.*, 121 F.Supp. 417 (D.D.C. 1954), and numerous state court decisions collected in 4 Wigmore, 1964 Supp., pp. 66-73.

The City contends that the "matter" about which Glover's statements were concerned is the shooting, and that Glover was acting outside the scope of his employment at the time of the shooting. The City further argues that, through the use of Glover's statements and testimony, the plaintiffs are

---

[1] The City acknowledges in its brief that "[i]n order for the statements or testimony by Glover (a servant of the city) to be offered against the relevant party (the city) made admittedly during the existence of his employment relationship with the city, they must have concerned "a matter within the scope of . . .employment. . ." (Def.'s Br. at 7.)

5

attempting to prove that the shooting was committed within the scope of his employment. According to the City, the plaintiffs should not be allowed to do so. More precisely, the City argues as follows:

> In order for the statements or testimony by Glover (a servant of the city) to be offered against the relevant party (the city) made admittedly during the existence of his employment relationship with the city, they must have concerned "a matter within the scope of the . . . employment." Fed. R. Evid. 801(d)(2). The problem is, of course, that the plaintiffs are trying to prove just that with these statements, that is, they are trying to use the statements to prove that the matter (the shooting of Prado) was within the scope of employment. It is actually the plaintiffs and not the city who are employing circular logic. The statements and testimony are offered to prove what the rule requires as an assumption – that the matter, the shooting, was within the scope of Glover's employment. That simply cannot be done.

(Def's Br. at 7.)

The contents of Glover's statements and testimony may form part of the basis for establishing that the statements and testimony were made "concerning a matter within the scope" of Glover's employment. Indeed, Fed. R. Evid. 801(d)(2) contemplates the use of the contents of the statements in establishing scope of agency or employment under subdivision (D): "The contents of the statement shall be considered but are not alone sufficient to establish the . . . agency or employment relationship and scope thereof under subdivision (D). . . ." Here, Glover's statements that during the shooting he was "on duty," was acting as a police officer, and identified himself as a police officer, support an inference that such statements concerned "a matter within the scope" of his employment.

However, it is not merely the contents of Glover's statements that support an inference that his statements and testimony concerned a matter within the scope of Glover's employment. As part of his job duties, Glover was expected to "at all times within the boundaries of the City, preserve the public peace, prevent crime, detect and arrest violators of law, and protect life and property." Milwaukee Police Department Rules & Regulations ("MPD Rules & Regulations"), Section

6

2/015.00; *see also Id*. at 2/025.00 ("The fact that they may be technically 'off duty' shall not be held as relieving them from the responsibility of taking required police action in any matter coming to their attention at any time."). Indeed, Glover was authorized "to use force in the performance" of his police duties, and was permitted to carry a handgun when he was off duty. *Id*. at 2/445.00, 2/900.95.

As the MPD Rules & Regulations demonstrate, the use of force to carry out required police action, even while off duty, falls within the scope of Glover's employment. Such being the case, Glover's actions in the shooting, whether he was off duty or on duty, at the very least implicate Glover's duties as a police officer. Indeed, Glover's actions immediately triggered a Milwaukee Police Department investigation to determine whether Glover's actions were justified because he was a police officer carrying out his police duties. Glover's statements to the investigating authorities and his inquest testimony were in direct response to the investigation of whether the use of this force was a justifiable police action. Such being the case, I am satisfied that Glover's statements and inquest testimony were, for admissibility purposes, made "concerning a matter within the scope" of his employment.

Furthermore, the plaintiffs need not conclusively establish that Glover's conduct during the course of the shooting was actually within the scope of his employment in order to meet the requirements of Fed. R. Evid. 801(d)(2)(D). Rather, as noted above, "[t]he only requirement is that the subject matter of the admission match the subject matter of the employee's job description." *Aliotta*, 315 F.3d at 762. In my opinion, the plaintiffs have satisfied this requirement. Whether the plaintiffs will be able to prove (as they must) that Glover's shooting Prado was within the scope of his employment is a question separate from whether his statements about the shooting concerned "a matter within the scope" of his employment with the City. The first is a question that goes to the

7

ultimate issue of liability; the second is a question of evidentiary admissibility, the weight of which evidence is to be determined by the trier of fact.

The City also argues that Glover's prior statements and testimony should not be admitted under Fed. R. Evid. 801(d)(2)(D) because, due to his death, Glover is not available to testify. According to the City, the party admission rule presumes the party will be available to testify. In this regard, the City cites *Globe Sav. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 95 (Fed. Cl. 2004), in which the court noted that

> admissions "pass the gauntlet of the hearsay rule," which requires that extrajudicial assertions be tested by cross-examination, because the declarant, in the circumstance of making an admission, is "the only one to invoke the hearsay rule and because he does not need to cross-examine himself. . . In other words, the hearsay rule is satisfied; [the declarant] has already had an opportunity to cross-examine himself . . .; or (to put it another way) he now as opponent has the full opportunity to put himself on the stand and explain his former assertion."

*Quoting* 4 John Henry Wigmore, Evidence in Trials at Common Law § 1048, at 4-5 (James H. Chadbourn ed., 1972).

However, a party's ability to cross-examine himself is not the sole rationale behind the party admission rule. As noted by the Seventh Circuit, "Rule 801(d)(2)(D) takes the broader view that an agent or servant who speaks on any matter within the scope of his agency or employment during the existence of that relationship, is unlikely to make statements damaging to his principal or employer unless those statements are true." *Nekolny v. Painter*, 653 F.2d 1164, 1172 (7th Cir. 1981).

But, no matter. Regardless of the rationale behind the classification of party admissions as non-hearsay, there is no requirement that a witness be available in order for his statement to be admissible under Fed. R. Evid. 801(d)(2)(D). Although unavailability is not required of admissions, neither is the declarant's availability. *See Savarese v. Agriss*, 883 F.2d 1194, 1201 (3d Cir. 1989)

8

("If a declarant 'need not be dead,' it logically follows that the declarant could be dead."); *see also White v. Honeywell, Inc.*, 141 F.3d 1270, 1277 (8th Cir. 1998) ("The availability of the declarant is not relevant under Rule 801(d)(2)(D) because under the rule, the statement is not hearsay."). Thus, the City's inability to examine Glover with regard to his prior statements is irrelevant to a determination of whether the statements are admissible under Fed. R. Evid. 801(d)(2)(D).

Indeed, the factual scenario presented by the case at bar is not unlike that presented in *Todd v. City of Chicago*, 28 F. Supp.2d 1062 (N.D. Ill. 1998). In *Todd*, the administrator of the estate of a suspect who was accidently shot by police officers brought a § 1983 action against the City and the then-deceased officer's (Police Officer Raymond Armstrong's) estate. The City brought a motion for summary judgment based on the proposition that at the time of the shooting Armstrong was not acting within the scope of his employment. The court denied the City's motion based on a number of statements made by Armstrong which would support a finding that, in fact, he was acting within the scope of his employment at the time of the shooting. In doing so, the court specifically found Armstrong's statements to be admissible against the City under Fed. R. Evid. 801(d)(2)(D). After listing Armstrong's various statements, the court stated:

> If any one or more of those statements is or are admissible in evidence, they create an obvious and material factual issue that would preclude the entry of summary judgment. It would present a classic case calling for the factfinder to determine whether Armstrong was indeed acting within the scope of his employment, rather than engaging in a purely personal endeavor: what from common law times to the present has been termed the distinction between a "frolic" of the employee's own . . . and a "detour" sufficiently related to employment[.] And on that score Fed. R. Evid. [] 801(d)(2)(D) renders Armstrong's statements admissible against the City as nonhearsay (Armstrong's intervening death makes no difference[.]). As the 1997 amendments to Evid. Rule 801(d)(2) has confirmed, those statements may themselves be considered (though they are not alone enough) to establish the agency at issue[.]

*Todd*, 28 F. Supp. 2d at 1064 (internal citations omitted).

9

The City also argues that Glover's statements cannot be admitted against the City, as opposed to against the estate, in a situation in which the estate itself is not an opponent of the plaintiffs. (Def.'s Br. at 11.) According to the City, the estate is not a party-opponent because both the estate and the plaintiffs would benefit from a finding that Glover was acting within the scope of employment. The City cites *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir. 1979) in support. At issue in *Huff* was the admissibility of a statement made by the decedent in a case involving the decedent's estate. 609 F.2d at 289. The defendant argued that the decedent's statement was an admission because privity existed between the decedent and his widow, who brought the wrongful death action. *Id.* at 290. The Seventh Circuit held that privity-based admissions do not fall under Rule 801(d)(2). *Id.* at 290-91.

However, whether Glover's statements constitute admissions against his estate is immaterial to whether Glover's statements constitute admissions against the City. Glover's prior statements fall under Rule 801(d)(2)(D) as admissions against the City because of Glover's status as an employee of the City. Glover's relationship with the estate has no bearing on his relationship with the City.

Of course, even if Glover's statements are deemed to be admissions under Rule 801(d)(2)(D), this does not mean that his statements would necessarily be admitted. To be sure, party-opponent admissions "are accorded generous treatment in determinations of admissibility." *Aliotta*, 315 F.3d at 761; *see* Advisory Committe Notes to Fed. R. Evid. 801 ("no guarantee of trustworthiness is required in the case of an admission" and admissions enjoy "freedom . . . from the restrictive influences of the opinion rule and the rule requiring first-hand knowledge."). However, Fed. R. Evid. 403 still applies to admissions, and "a trial judge can exclude admission evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Aliotta*, 315 F.3d at 763.

10

In the case at hand, Glover's statements regarding his own actions are evidence of the circumstances of the shooting, as well as of Glover's motive, intent, and purpose when he shot Prado. The circumstances of the shooting and Glover's motive, intent, and purpose at the time of the shooting relate directly to the plaintiffs' non-*Monell* claim and the crucial question of whether Glover was acting under color of law and within the scope of his employment at the time of the shooting. As such, Glover's prior statements recounting the events of the shooting have high probative value.

The City argues that it would be unfairly prejudiced by the admittance of Glover's statements because no attorney from the City has ever had the opportunity in an adversarial process to question Glover about his intentions and motives. To be sure, the admittance of Glover's statements may have some prejudicial effect on the City. However, Glover's statements were not given in the absence of City officials. As noted above, Glover's statements were provided as part of a Milwaukee Police Department internal affairs investigation, and Glover was interviewed by various supervisory officers within the Milwaukee Police Department. Although some of these officers were investigating the incident to determine whether Glover may have committed a homicide, other officers were questioning Glover to determine whether there was employee misconduct. Such being the case, representatives of the City did have some opportunity to question Glover prior to his death about his intentions and motives. Given the highly probative value of Glover's statements, and the lessening of the potential prejudice to the City due to the fact that the statements were given as part of an official Milwaukee Police Department investigation, I conclude that the statements' probative value is not substantially outweighed by the danger of unfair prejudice.

In sum, and for all the foregoing reasons, the prior statements provided by Glover during interviews and in written reports as part of the Milwaukee Police Department, Internal Affairs

11

Bureau's investigation into the shooting, as well as Glover's testimony at the Inquest, are admissible against the City as party admissions under Fed. R. Evid. 801(d)(2)(D). Furthermore, the probative value of the statements and testimony is not substantially outweighed by the danger of unfair prejudice. Given this court's determination that the statements and testimony are admissible under Fed. R. Evid. 801(d)(2)(D), it is not necessary for the court to determine whether the statements would be admissible under the residual hearsay exception.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion to admit Officer Glover's inquest testimony and other prior statements be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that on Monday, June 23, 2008, at 9:00 a.m., a scheduling conference will be conducted to discuss with the parties the steps needed to process this case to resolution and to set dates to govern the processing of the case to resolution.

**SO ORDERED** this 12th day of June 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge