ESTRELLA ADELA JAVIER and DANIELA
JAVIER, minor children of Wilbert Javier Prado,
appearing by their Guardian *ad Litem*,
Ernesto Romero, ESTATE OF WILBERT
JAVIER PRADO, by PATRICIA D. JURSIK,
Special Administrator,

        Plaintiffs,

                                 Case No. 07-C-0204

    v.

CITY OF MILWAUKEE, ESTATE OF
ALONZO C. GLOVER,

        Defendants.

---

## BRIEF IN SUPPORT OF MOTION OF DEFENDANT, CITY OF MILWAUKEE, FOR PARTIAL SUMMARY JUDGMENT

---

## INTRODUCTION

The City's motion for partial summary judgment focuses on four of the six claims for relief sought by the Prado children and the Prado estate. This motion addresses those claims brought under federal law, including the punitive damages claim. These are set forth in paragraphs 71 through 92 of the complaint, and include a claim of unreasonable use of force (Complaint, ¶¶'s 71 through 75), a fourteenth amendment claim asserting a deprivation of life without due process (Complaint, ¶¶'s 76 through 80), a claim of an unconstitutional policy, practice or custom on the part of the City of Milwaukee (Complaint, ¶¶'s 81 through 89), and a claim for punitive damages (Complaint, ¶¶'s 90

through 92).  This Court should grant partial summary judgment, dismissing all of these

claims.

## ARGUMENT

## I.    STANDARD FOR GRANTING SUMMARY JUDGMENT

The defendant, Board of School Directors of the Public Schools of the City of

Milwaukee, is moving for summary judgment pursuant to Fed.R.Civ.P. 56.  That rule reads

in relevant part as follows:

> (c)  The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together with
> the affidavits, if any, show that there is no genuine issue as to any material
> fact and that the moving party is entitled to a judgment as a matter of law...

> (e)  When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere allegations
> or denials of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.

A party seeking summary judgment must demonstrate that no genuine issue of material fact

exists for trial and that the movant is entitled to judgment as a matter of law.  *Hannon v.

Turnage*, 892 F.2d 653, 656 (7th Cir. 1990).

If that showing is made and the motion's opponent would bear the burden at trial on

the matter that forms the basis of the motion, the opponent must come forth with evidence

to show what facts are in actual dispute.  *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392

(7th Cir. 1990).  If he or she fails to do so, summary judgment is proper.  *National Diamond

Syndicate, Inc. v. UPS*, 897 F.2d 253, 260 (7th Cir. 1990).  A genuine factual issue exists

only when there is sufficient evidence for a jury to return a verdict for the motion's

opponent.  *Santiago v. Lane*, 894 F.2d 218, 221 (7th Cir. 1990).  Summary judgment should

be granted if no reasonable jury could return a verdict for the motion's opponent.  *Krist v.

Eli Lilly and Co.*, 897 F.2d 293, 296 (7th Cir. 1990).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v.

Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir. 1990), or upon conclusory

allegations in affidavits.  *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.

1989).  The court must draw any permissible inferences from the materials before it in favor

of the non-moving party, *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989), as long as

the inferences are reasonable.  *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886

(7th Cir. 1989).

The non-moving party must show that the disputed fact is material, or outcome -

determinative, under applicable law.  *Local 1545, United Mine Workers v. Inland Steel Coal

Co.*, 876 F.2d 1288, 1293 (7th Cir. 1989).

> As to materiality, the substantive law will identify which facts are material.
> Only disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is proper

against a plaintiff who fails to establish an element of his claim on which he will bear the

burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Justice White in *Anderson*, 477 U.S. 242, 247-49, set forth the Court's position on

what constitutes genuine issues of material fact precluding the entry of summary judgment.

Justice White stated:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Id*. at 249. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id*.

Justice White noted that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) which dictates that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Id*. at 250. The Court indicated in *Anderson* that it has long been the law that judges are not required to submit a question to the jury merely because some evidence has been introduced by the party bearing the burden of proof. Such issues need only be submitted where the evidence is sufficient to warrant a jury verdict in favor of the party in question.

This mandate requires more than a scintilla of evidence. Rather, it requires an inquiry by the court before submitting matters to juries as to whether there is sufficient evidence upon which a jury could properly proceed to find a verdict for the party bearing the burden of proof. *Id*. at 251. It is incumbent upon the court to grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law.

4

## II.     GLOVER DID NOT ACT UNDER COLOR OF STATE LAW

The plaintiffs cannot establish that Alfonzo Glover acted under color of state law during the course of events leading up to the death of Wilbert Prado.  That is so because they lack any proof that whatever Glover may have done to purport to act under color of state law influenced Prado's behavior in any way.  The Court must reach this conclusion even should it choose to consider the hearsay evidence of Glover's earlier statements or testimony, or the testimony of others concerning what may have been Glover's words at the time of the incident.  To show that this is the correct conclusion, the City will first recount pertinent precedent, and then demonstrate how it leads to only one conclusion in this case—Glover was not acting under color of state law because he did not possess or attempt to use any pretense of authority to influence Prado's behavior.

"To state a claim for relief in an action brought under [42 U.S.C.] §1983, [the plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  With respect to the second element, the Supreme Court has further established that it is the "'[m]issue of power, possessed by virtue of state law and *made possible only because the wrongdoer is clothed with the authority of state law*'" constitutes an action taken under color of state law.  *Monroe v. Pape*, 365 U.S. 167, 184 (1961), *quoting United States v. Classic*, 313 U.S. 299, 326 (1941) (emphasis supplied).  Given this holding, and the application and further interpretation of this element by various other courts, it is clear that the plaintiffs

5

here cannot establish action under color of state law. To demonstrate this, it is necessary first to look to the holdings of those various other tribunals.

Turning first to the seventh circuit, that court, citing the preceding holding, has explained that "[n]ot every action by a state official or employee is to be deemed as occurring 'under color' of state law." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). It further held in general that "state officials or employees who act without the cloth of state authority do not subject themselves to §1983 suits." *Hughes*, *supra*.

In *Haines v. Fisher*, 82 F.3d 1503, 1505-6 (10th Cir. 1996), the appellate court considered a civil rights claim brought by a grocery store clerk who claimed emotional injuries resulting from an elaborate prank played upon him by a number of on-duty police officers. The officers concocted a plan in which they used a department-owned rifle, trench coat (from the McGruff crime prevention program), and a department-owned balaclava to disguise one of the officers as a robber. *Id*. at 1505. One of the conspirators, a police dispatcher, called the clerk before the disguised officer came to the store to provide a matching description and warning of a robber in the area. *Id*. at 1505. The disguised police officer was driven to the store in a police car by another officer. *Id*. at 1506. The officer-driver and another officer kept watch outside the store to keep the public out while the disguised officer entered, and, eventually, fired the rifle which had been loaded with blanks. *Id*. at 1506.

The district court granted summary judgment on the store clerk's §1983 claims against the officers. *Haines*, 82 F.3d at 1506. Upon review, the appellate court first explained that, "[s]ection 1983 was enacted 'to deter state actors from using the badge of

6

their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.'" *Haines*, 82 F.3d at 1508, *quoting Wyatt v. Cole*, 504 U.S. 158, 161 (1992). The *Haines* court then further noted that, "'[t]he traditional definition of acting under color of state law requires that the defendant in a §1983 action exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."'" *Haines*, 82 F.3d at 1508, *quoting West*, 487 U.S. 49.

Applying these and certain other holdings, the *Haines* court held "that the district court did not err in granting summary judgment in favor of the individual defendants on Haines' §1983 claims." *Haines*, 82 F.3d at 1508. "This is not a case in which the defendants 'exercised power "possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law.'" *Haines*, 82 F.3d at 1508, *quoting West*, 487 U.S. 49. The appellate court concurred with "the district court that '[i]n this case, the defendants, and in particular Defendant Reeve [the officer disguised as a robber], were not using their badges of authority, i.e., their positions as policemen for the Town of Torrington to accomplish the 7-Eleven prank in which plaintiff [Haines] was the intended victim.'" *Haines*, 82 F.3d at 1508 (citation omitted).

In *Almand v. DeKalb County, Georgia*, 103 F.3d 1510, 1511-12 (11th Cir. 1997), the appellate court considered a case in which a woman seeking the assistance of a police officer to locate her missing daughter and then to pursue the people who had kidnapped and raped the daughter was herself sexually assaulted by the officer. Almand ultimately was victimized by the officer when he came to her apartment and tried to persuade her to

7

have sex with him, but, when rebuffed, left, only to return moments later, breaking through the closed door and forcibly raping her. *Almand*, 103 F.3d at 1512.

In analyzing the color of law question, the appellate court noted that the officer's "initial entry into Almand's apartment probably was conducted under color of state law; he gained access to Almand's apartment because of his status as a police officer and his proffer of information about Almand's daughter." *Almand*, 103 F.3d at 1515. The court then noted, however, that "Almand excluded Bryant [the officer] from her apartment and closed the door completely." *Almand*, 103 F.3d at 1515.

"When Bryant reentered the apartment by forcibly breaking in, he was no different from any other ruffian [and] Bryant's act of breaking into the apartment and, by force, raping Almand was a private act not accomplished because of 'power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law.'" *Almand*, 103 F.3d at 1515, *quoting West,* 487 U.S. at 59. "Once Bryant resorted to sheer force to break, to enter, and to rape, his status as a police officer had no bearing on his wicked behavior." *Almand*, 103 F.3d at 1515. The appellate court thus concluded that Bryant "was not acting under color of state law" and was "due summary judgment." *Almand*, 103 F.3d at 1515.

While the appellate court in *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006) reached the conclusion that the officer involved in that case was acting under color of law, the analytical framework it applied was exceedingly insightful and, as will be seen below, leads to a very different result here. The officer in *Anderson* was an off-duty lieutenant in the Mendocino County Sheriff's Department named Charles Warner who

was a commander in the county jail. *Id.* at 1065. Warner's vintage pickup truck was rear-ended by Anderson en route to a parade. *Id.* After the accident, Warner went back to Anderson's vehicle, opened the door, and began hitting Anderson. *Id.* Warner, a probation officer and friend of Warner who was driving nearby, and Warner's wife all kept bystanders from intervening by telling people that Warner was a cop and that it was a "police matter." *Id.* at 1065-6.

In determining that Warner was acting under color of law, the appellate court considered "three critical requirements." *Id.* at 1068. "First the defendant's action must have been 'performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties.'" *Id* (citation omitted). As for the second requirement, the court held that it must be convinced that "the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others." *Anderson*, 451 F.3d at 1069, citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996) ("finding no color of state law because the victim had not opened the door based on defendant's status as a police officer."). *Anderson*, 451 F.3d at 1069. For a third factor, the plaintiff must make demonstrate that the "challenged conduct [is]…'related in some meaningful way either to the officer's governmental status or to the performance of his duties.'" *Anderson*, 451 F.3d at 1069 (citation omitted).

As should be readily apparent, it is the second factor that is relevant to the issue at hand in this case. That requirement was met in *Anderson* because Warner's "actions had the purpose and effect of discouraging bystanders from interfering" with his assault on Anderson. *Anderson*, 451 F.3d at 1069.

9

Governed by the legal principles set forth above, and turning to the knowable facts in the present matter, it is clear that the plaintiffs cannot show that Glover was able to misuse any police power against Wilbert Prado "*only because the wrongdoer [was] clothed with the authority of state law.*'" *Monroe*, 365 U.S. at 184, *quoting United States v. Classic*, 313 U.S. at 326. At the time of the incident, Glover did not have a police badge. PFOF 3; Smokowicz Affidavit, Attachment A, p. 65 (Reiter Deposition); Smokowicz Affidavit, Attachment D, p. 46 (Patti Deposition). He was not wearing an identifiable police shirt. *Id*. He was driving his personal car, and not a marked police squad car. PFOF 6; Smokowicz Affidavit, Attachment B, p. 41 (Salazar Deposition) and Exhibit 2, Bates pp. 723, 727.

Just as importantly, there is no evidence that whatever Glover may have done or, as the plaintiffs are sure to raise, whatever he may have said allowed Glover to misuse any power by fatally shooting Wilbert Prado. There is no evidence that Prado stopped his car before Glover started shooting because Glover announced himself as a police officer, or because Glover issued any commands in the name of the law, assuming he ever did so. There is no evidence, furthermore, that Prado then proceeded to stop his car by driving into parked vehicles because of any purported display of authority. Prado then apparently left the vehicle and went down a nearby alley. There is certainly no evidence that this occurred because of any display of purported authority by Glover. Lastly, Prado was found shot in the alley some distance from his and Glover's vehicles (PFOF 8; Smokowicz Affidavit, Attachment D, pp. 46, 55-58 (Patti Deposition) and Exhibit 2); there is no evidence that any of the fatal shots, or, for that matter, that any of the non-fatal

wounds were made possible by any display of purported authority. There is no evidence that Prado surrendered, stopped moving, or "gave up" because of anything that Glover did or said to purport that he was acting with the authority of state law.

There is no evidence that Glover did anything but use "sheer force" to shoot and kill Prado and thus "his status as a police officer had no bearing on" what the plaintiffs are sure to describe as "his wicked behavior." *Almand*, 103 F.3d at 1515. He did not use any badge of authority to accomplish the use of fatal force upon Wilbert Prado. *Haines*, 82 F.3d at 1508. Applying the second part of the test employed by the ninth circuit, whatever Glover may have said was not done so "with the purpose and effect of influencing the behavior of" Prado. *Anderson*, 451 F.3d at 1069. The plaintiffs simply cannot, therefore, establish that Glover acted under color of state law.

As this Court is well aware, the City believes that prior statements and testimony made or attributed to Glover are not admissible with his death. Even with the Court having reached the opposite conclusion, and even with the plaintiffs relying upon that material, this Court must still conclude that there is no evidence that whatever Glover may have said was not done so "with the purpose and effect of influencing the behavior of" Prado. *Anderson*, 451 F.3d at 1069.

In his testimony, first of all, Glover stated that near the outset of the incident he said he was "'a cop'" but that was when Prado was striking Glover with the Prado vehicle, and Glover testified that he did not "know if the driver [Prado] could hear [Glover] or not." Affidavit of Megan A. Senatori of April 17, 2008, Attachment G, pp. 20-21. After Prado had driven into two parked cars, Glover claimed that he again

identified himself as a police officer and ordered Prado to the ground, but Prado did not comply and did not comply with a claimed command to show his hands. Affidavit of Megan A. Senatori of April 17, 2008, Attachment G, pp. 20-22. Glover asserted that he also directed Prado to drop his weapon, but, of course, since Prado was apparently unarmed there was no weapon to drop. Affidavit of Megan A. Senatori of April 17, 2008, Attachment G, pp. 22-23; PFOF 7; Smokowicz Affidavit, Attachment B, p. 84 (Salazar deposition). Nothing in any of Glover's claimed commands, finally, ever stopped Prado from going down an alley and fleeing from Glover. Affidavit of Megan A. Senatori of April 17, 2008, Attachment G, pp. 22-24. There is no evidence in any of this testimony that Glover was able to misuse any police power against Wilbert Prado "*only because the wrongdoer [was] clothed with the authority of state law.*'" *Monroe*, 365 U.S. at 184, *quoting United States v. Classic*, 313 U.S. at 326. In fact, it appears that any effort to clothe himself in that authority did not enable Glover in any fashion to misuse his power; whatever Glover may have said did not have both "the purpose *and effect* of influencing the behavior of" Prado. *Anderson*, 451 F.3d at 1069 (emphasis supplied).

The plaintiffs may, finally, attempt to rely upon the testimony of two individuals nearby, one of whom heard at some point a person yelling "Get down. Get down," while the other heard "Drop it. Drop it now. Put it down." Affidavit of Megan A. Senatori of April 17, 2008, Attachment I, pp. 72-73, 80. There is no evidence and there is only pure speculation that these statements had any effect of influencing Prado's behavior in a way so that Glover could misuse any police power against Prado. There is no evidence from

any source that Prado submitted to any directive that Glover may have issued, thereby allowing Glover to wound or to kill Prado.

The plaintiffs simply cannot establish that Glover's "alleged deprivation" of Prado's civil rights "was committed under color of state law." *American Mfrs. Ins. Co.*, 526 U.S. at 49-50.  The plaintiffs cannot, therefore, maintain a civil rights claim against Glover and the Court should grant summary judgment dismissing that claim with prejudice.

## III. IN THE ABSENCE OF A SECTION 1983 CLAIM AGAINST GLOVER, THE PLAINTIFFS DO NOT HAVE A CIVIL RIGHTS CLAIM AGAINST THE CITY

In the absence of a viable §1983 claim against Glover, the plaintiffs, of course, have no viable §1983 claim against the City of Milwaukee.  In the absence of any constitutional violation, they also have no claim of any alleged policy, practice or custom violating his civil rights.  City of Los Angeles v. Heller, 475 U.S. 796, 105 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986), Teece v. Hochstetler, 213 F.3d 360, 364 (7th Cir. 2000); *Grossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) ("Here the Sheriff's Department cannot be found liable [on a §1983 claim alleging an unconstitutional policy, practice or custom] because [the deputies']…actions did not constitute, nor did they cause, a constitutional tort").  Their complaint against the City of Milwaukee should, therefore, also be dismissed with prejudice.

## IV. THE PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES

Even should this Court determine not to grant summary judgment dismissing all of the plaintiffs' §1983 claims, it should nevertheless grant judgment dismissing a certain portion of those claims. That portion is the plaintiffs' claim for punitive damages.

"The scope of punitive damages in §1983 actions is governed by the 'federal common law of damages.'" *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998). In a §1983 action seeking among other items the recovery of punitive damages, the Third Circuit Court of Appeals, when ordering a retrial, noted "that although defendant Bogen was deceased at the time of trial, the question of his liability as to punitive damages was submitted to the jury[;] [p]unitive damages, however, are not generally awarded against a decedent." *Savarese v. Agriss*, 883 F.2d 1194, 1205 n. 15 (3rd Cir. 1989) *citing Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295, 1301 & n. 5 (11th Cir. 1982); *Barnes v. Smith*, 305 F.2d 226, 231 (10th Cir. 1962); Restatement (Second) of Torts § 908 comment a (1979).

In the present case, the only defendant from whom the plaintiffs can recover any punitive damages is Alfonzo Glover. Tragically, he took his own life. The plaintiffs, therefore, cannot recover punitive damages in this action.

## CONCLUSION

For the foregoing reasons, this Court should grant partial summary judgment, dismissing the plaintiffs' civil rights and punitive damages claims against the defendant, City of Milwaukee (and, of course, the defendant Estate of Alfonzo C. Glover) on their

merits and with costs or, in the alternative, should grant partial summary judgment dismissing any punitive damages claims.

Dated at Milwaukee, Wisconsin this 1st day of June, 2009.

GRANT F. LANGLEY
City Attorney


s/JAN A. SMOKOWICZ
Assistant City Attorney
Attorneys for Defendant
City of Milwaukee

P.O. ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI  53202
(414) 286-2601
Facsimile:  (414) 286-8550
jsmoko@Milwaukee.gov

1032-2007-753:146405