UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTRELLA ADELA JAVIER and
DANIELA JAVIER, minor children of
Wilbert Javier Prado, appearing by their
Guardian *ad Litem*, Ernesto Romero,

ESTATE OF WILBERT JAVIER PRADO,
by PATRICIA D. JURSIK, Special
Administrator,

                Case No. 07-C-0204

        Plaintiffs,

    v.

CITY OF MILWAUKEE,

ESTATE OF ALFONZO C. GLOVER,

        Defendants.

## PLAINTIFFS' BRIEF OPPOSING DEFENDANT CITY OF MILWAUKEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Eric A. Farnsworth (#1017954)
Howard B. Schoenfeld (#1014052)
Megan A. Senatori (#1037314)
13935 Bishop's Drive, Ste. 300
Brookfield, WI 53005

2 E. Mifflin Street, Suite 600
Madison, WI 53703

Dated: July 1, 2009         **ATTORNEYS FOR PLAINTIFFS**

Plaintiffs respectfully submit the following brief in opposition to the Motion of Defendant, City of Milwaukee, for Partial Summary Judgment.

## INTRODUCTION

Defendant City of Milwaukee ("City") has moved for partial summary judgment on three limited bases, none of which justify a ruling in the City's favor by this Court.

First, the City contends it is entitled to summary judgment dismissing Plaintiffs' individual claim against Milwaukee Police Officer Alfonzo C. Glover ("Glover") under 42 U.S.C. § 1983 because Plaintiffs allegedly "lack any proof that whatever Glover may have done to purport to act under color of law influenced Prado's behavior in any way." Brief in Support of Motion of Defendant, City of Milwaukee, For Partial Summary Judgment ("City's Br.") at 5. The Court should deny the City's motion because: (1) the City's construction of the color of law test is wrong; and (2) there is ample evidence from which a fact finder could conclude that Glover was acting under color of law when he shot and killed Wilbert Javier Prado.

Second, the City contends it is entitled to summary judgment on Plaintiffs' *Monell* claim because "In the absence of a viable § 1983 claim against Glover, the plaintiffs, of course, have no viable § 1983 claim against the City of Milwaukee." City's Br. at 13. Notably, the City does not contend that Plaintiffs lack sufficient evidence to support a *Monell* claim. Rather, the City's motion on the *Monell* claim rises and falls entirely with its color of law theory. The Court should reject the City's motion because a fact finder could easily find that Glover was acting under color of law and, thus, Plaintiffs' *Monell* claim cannot be resolved on summary judgment.

Case 2:07-cv-00204-WEC   Filed 07/01/09   Page 2 of 23   Document 94

Finally, the City has moved for summary judgment dismissing Plaintiffs' punitive damages claim brought under 42 U.S.C. § 1983 because allegedly "punitive damages… are not generally awarded against a decedent." City's Br. at 14. Notably, the City does not contend that there is insufficient evidence to support a punitive damages award. Rather, the City contends only that since Glover is deceased, no such award can be made. The Court should reject the City's motion because case law in the Seventh Circuit clearly authorizes an award of punitive damages in a Section 1983 case even when the state actor is deceased.

In sum, none of the City's purported grounds for requesting partial summary judgment withstand scrutiny. Therefore, the Court is respectfully requested to deny the City's Motion for Partial Summary Judgment and to schedule this case for trial on all claims.

## STATEMENT OF FACTS

A fact finder could find the following facts sufficient to support a conclusion that Glover was acting under color of law as a Milwaukee Police Officer at the time of the shooting.[1]

### A. General Background.

On March 6, 2005, Glover was employed by the City as a police officer with the Milwaukee Police Department ("Department" or "MPD"). Plaintiffs' Proposed Findings

---

[1] Because the City has challenged the sufficiency of the evidence only with regard to whether Glover was acting under color of law, Plaintiffs' Statement of Facts sets forth facts solely regarding that limited issue. Plaintiffs do not, for example, provide a full accounting of the Incident or set forth the full facts that would support a finding that Glover's use of deadly force was objectively unreasonable, excessive, and in violation of the Fourth Amendment. Plaintiffs also have not set forth all of the facts that would support a finding that the City maintains an unconstitutional policy with the practice of condoning excessive uses of force by members of the Department

2

of Fact ("PPFF") 1.  On March 5, 2005, Glover worked the early shift from 4:00 p.m. until 12:00 a.m.  PPFF 2.  When Glover completed his duty shift on the morning of March 6th, he changed out of his uniform and into his civilian clothes.  PPFF 3-4.  The Milwaukee Police Department rules and regulations in effect on March 6, 2005 did not require off-duty officers to carry their badge.  PPFF 5.

When Glover left work, he was armed with a fully-loaded, semi-automatic Glock pistol.  PPFF 6.  The gun was approved by the Milwaukee Police Department for off-duty use by Glover.  PPFF 7.  Milwaukee Police Department Policy 2/900.95, which was in effect on March 6, 2005 permitted an off-duty officer to carry a handgun:

> **2/900.95 Off Duty Weapons**
>
> A.  When off duty, officers may carry their Department issued handgun, or a handgun of the same design and functional characteristics as their issued handgun.  Ammunition must be Department approved.
>
> B.  Off duty weapons must first be inspected and approved by the Department Range Master, who shall record the make, model, and serial number of the weapon.  This information shall be kept on file by the Range Master.
>
> C.  Members must demonstrate proficiency with the off duty handgun prior to carrying it.

PPFF 8.

**B.    The Incident.**

On his way home, Glover noticed a vehicle behind him flashing its high beams and following him closely.  PPFF 10.[2]  The van was driven by Wilbert Javier Prado ("Prado").  PPFF 11.  Glover pulled to the side of the road so Prado could pass, but Prado

---

[2] The Court has previously ruled in the Order Regarding Motion to Determine Admissibility of Inquest Testimony and Other Statements of Alfonzo C. Glover dated June 12, 2008, at page 12, that "the prior statements provided by Glover during interviews and in written reports as part of the Milwaukee Police Department, Internal Affairs Bureau's investigation into the shooting, as well as Glover's testimony at Inquest, are admissible against the City as party admissions under Fed. R. Evid. 801(d)(2)(D).

did not pass. PPFF 12. The van continued to follow Glover with the lights flashing. PPFF 13. Glover grew concerned that the driver of the van might intend to rob him or carjack him, or that the driver perhaps had followed him from work. PPFF 14.

Glover parked his car at the northeast corner of the intersection of West Ohio Avenue and South 9th Street. PPFF 15. Glover chose to stop at the intersection because it was well-lit and there are typically people in that area due to the presence of two taverns at 9th Street and Ohio Avenue. PPFF 16. Prado stopped behind him. PPFF 17. Glover exited his vehicle at or near the intersection of South 9th Street and West Ohio Avenue. PPFF 18. Glover testified that he heard the van accelerate and believed that the van's operator was attempting to strike him with the van. PPFF 19. Glover stated "I'm a cop" (PPFF 20) as he leaped out of the way. PPFF 20.

At this point, Glover considered himself to be acting as a police officer. PPFF 21. Glover was aware of the Departmental rule that as an off-duty officer he was "obligated to take some form of action if witnessing a crime being occurred—that's occurring." PPFF 22. Milwaukee Police Department regulations require officers to take police action as they deem necessary to protect and serve the public even when off duty. PPFF 23. The regulations in effect on March 6, 2005 (the "always on duty rule") provided:

> **2/015.00** Members of the police force shall, at all times within the boundaries of the City, preserve the public peace, prevent crime, detect and arrest violators of the law, and protect life and property.
>
> **2/025.00** The fact that they may be technically "off duty" shall not be held as relieving them from the responsibility of taking required police action in any matter coming to their attention at any time.

PPFF 24.

There is evidence that Glover believed Prado was armed with a dangerous weapon. PPFF 25.[3] Glover fired a total of ten rounds of ammunition at or near the intersection of South 9th Street and West Ohio Avenue. PPFF 26. Prado then exited the van. PPFF 27. Glover repeatedly identified himself as a police officer and ordered Prado to get on the ground. PPFF 28. Glover and Prado made eye contact and Glover said to Prado, "Milwaukee Police Department. Get on the ground. Show me your hands." PPFF 29. When Prado did not comply, Glover yelled again, "Milwaukee Police. Get on the ground. Get on the ground." PPFF 30. Glover then fired a total of seven rounds of ammunition from his weapon at or near the entrance to the alleyway along West Ohio Avenue between South 9th Street and South 9th Place. PPFF 31.

Prado ran toward the alley. PPFF 33. Glover continued to pursue Prado to "safely and effectively take him into custody." PPFF 32. Glover then fired his weapon a third time. PPFF 34. The final two shots were fired in the alley. PPFF 35.

In total, Glover fired 19 shots at Prado. PPFF 41. Prado was shot a total of eight times. PPFF 42. Prado was killed by the shots Glover fired. PPFF 43-44.

Glover called 911 and repeatedly identified himself to the operator as "an off-duty officer." PPFF 36. Glover told several citizens at the scene that he was an off-duty police officer. PPFF 37-40.

## C.    Plaintiffs' Expert Testimony Regarding Color of Law.

Plaintiffs designated Lou Reiter as an expert witness in this case. Mr. Reiter has been actively involved in police practices and law enforcement since 1961. Declaration of Lou Reiter ("Reiter Dec.") at ¶ 1. He was an active police officer for 20 years. *Id.*

---

[3] Despite Glover's claim that Prado was armed, the evidence confirms that Prado never fired at Glover. PPFF 45. No weapon (other than Glover's own weapon) was discovered or ever recovered at or near the shooting scene by anyone investigating this shooting. PPFF 46.

Since his retirement from the Los Angeles Police Department in 1981, Mr. Reiter has been involved in police and law enforcement practices as a private police consultant. *Id.*

In his expert report in this case, Mr. Reiter opined, among other things, that Glover was acting as a police officer, and not a private citizen, during the Incident. Reiter Dec. at ¶ 5. Reiter's opinions are based on the fact that the Department's "always on duty" policy required Glover to take police action in this Incident even though he was off-duty. *Id.* Further, the decisions Glover made during the Incident were those of a police officer, not an untrained citizen. *Id.* The commands Glover gave to Prado were "consistent with the types of orders a police officer would be giving someone they were attempting to apprehend." *Id.*; PPFF 71. Mr. Reiter's opinions are further set forth in his reports. Reiter Dec., Exs. A and B.

### D. Until This Litigation, The City Never Disavowed Glover's Actions As Those Of A Private Citizen, Not A Police Officer.

The record contains ample evidence that the Milwaukee Police Department never disavowed Glover's actions, but instead treated them as actions taken in his capacity as a police officer. During the Milwaukee Police Department's investigation into the Incident, Glover stated that he had repeatedly identified himself to Prado as a Milwaukee Police Officer. PPFF 47. None of the Department's reports of those interviews challenge or question Glover's statements that he was acting as a police officer. PPFF 48.

Glover received employment-related benefits regarding the Incident. In April 2005, Glover filed a "Health Insurance Claim" and an "On Duty Injury" with the Department. PPFF 49-52. The Department filed a "Report of Accident to Employee Under Worker's Compensation Act." PPFF 53-55. Glover received Worker's

Compensation Benefits for medical expenses totaling $2,249.46 relating to injuries he sustained during the Incident. PPFF 56.

Glover remained an employee of the Milwaukee Police Department even as of the date of his death on May 30, 2006, more than a year after the shooting. PPFF 57. Even though City of Milwaukee Chief of Police Hegerty had authority to suspend Glover (PPFF 58), she followed standard Department protocol and assigned Glover to station house duty following the shooting. PPFF 58. An assignment to station house duty does not imply any impropriety in conduct by the officer. PPFF 59. An officer on station house duty receives all pay and benefits, retains his on-duty gun or his department-approved off-duty weapon, is permitted to wear the uniform of the Milwaukee Police Department, and continues to have a duty to take official police action when technically off-duty. PPFF 60-63. Glover remained on station house duty, with full pay and benefits, for over a year following the Incident. PPFF 58. At the Inquest into the shooting, Glover did not testify in civilian clothing—the Department allowed him to testify in full uniform as a Milwaukee Police Officer regarding the actions he took as a police officer. PPFF 69-70.

The Department adopted Glover's statements that he was taking police action during the Incident. For example, in a letter to the City of Milwaukee Fire and Police Commissioners on March 7, 2005, Chief Hegerty referred to Glover throughout the letter as "Officer Glover" and adopted Glover's statements that he had identified himself as a police officer and issued commands to Prado during the Incident. PPFF 65-68. Even after criminal charges were issued and Glover committed suicide, the Department continued in official Departmental reports to adopt Glover's statements that he was acting

as a police officer, not a private citizen, during the Incident.  PPFF 64.  Members of the Department involved in the investigation of the Incident never heard anyone within the Department ever contend that Glover had been acting as a private citizen, not a police officer, during the Incident.  PPFF 72.

Additional facts are set forth at pertinent points in the argument below.

## STANDARDS FOR GRANTING SUMMARY JUDGMENT

The City correctly states that summary judgment is to be granted if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  City's Br. at 2, *quoting* Fed. R. Civ. P. 56(c). But the City then argues that summary judgment must be granted in its favor unless Plaintiffs submit evidence "sufficient to warrant a jury verdict in [their] favor."  City's Br. at 4.  If the City is arguing that Plaintiffs must conclusively establish their case in order to survive summary judgment, the City is wrong.  Plaintiffs need only to come forward with sufficient facts requiring a trial.

In *First Nat'l Bank of Arizona v. Cities Service Co*., 391 U.S. 253 (1968), the United States Supreme Court made clear that to defeat summary judgment the opposing party need only demonstrate a factual dispute requiring a trial:

> [T]he issue of material fact required by Rule 56(e) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

391 U.S. at 288-89.  Plaintiffs need not show that they will, in fact, win at trial as a prerequisite to defeating the City's summary judgment motion.

Rather, if the record shows that facts and permissible inferences exist that could permit a fact finder to decide in Plaintiffs' favor, the City's motion for partial summary judgment must be denied. *Id.; Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 468 (1962); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (stating that courts must consider inferences as well as facts). Put another way, the Court should grant the City's motion for partial summary judgment only if "it is quite clear what the truth is … [and where] no genuine issue remains for trial … [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller,* 368 U.S. at 468 (citation omitted; ellipses in original). In its analysis, the Court "is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

Applying these standards, the Court should deny the City's Motion for Partial Summary Judgment because there are genuine issues for trial in this case.

## ARGUMENT

I. **BASED ON THE EVIDENCE AND INFERENCES FROM THE EVIDENCE, A FACT FINDER COULD REASONABLY CONCLUDE THAT GLOVER ACTED UNDER COLOR OF STATE LAW WHEN HE SHOT AND KILLED PRADO.**

The City argues (City's Br. at 5-13) that Plaintiffs' Section 1983 claims fail because as a matter of law Glover did not act under color of state law. The City is wrong.

### A. Applicable Legal Standards.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49 (1988) (citation omitted). A government employee acting

in his official capacity generally is deemed to be acting under color of state law. *Id.* Such acts are under color of state law even if they constitute an abuse of official power or exceed the official's powers. *Id.* at 49-50; *Screws v. United States*, 325 U.S. 91, 111 (1945). Indeed, "acts of public officials may be 'under color of state law' precisely when they are gross or extraordinary abuses of the authority given to them." *Cameron v. City of Milwaukee,* 102 Wis. 2d 448, 457-58, 307 N.W.2d 164 (1981) (quoted source omitted). Case law demonstrates that "the federal courts have given the 'color of law' element of a sec. 1983 claim a generous construction." *Id.* at 458 (citations omitted).

### B. Glover's Off-Duty Status Is Not Dispositive As To Color Of Law.

The primary basis of the City's contention that Glover was not acting under color of law appears to be the fact that he was off-duty at the time of the Incident. The City points to evidence that Glover "did not have a police badge," was "not wearing an identifiable police shirt," and was "driving his personal car, and not a marked police squad car" to support the notion that he was not acting under color of law. City's Br. at 10. These facts, however, are not dispositive as to color of law. If they were dispositive, a Section 1983 claim would never lie against an off-duty police officer. However, as discussed below, off-duty officers can, and indeed, do act under color of state law.

The key to whether a police officer has acted under color of state law is not whether the police officer was on duty or off duty at the time of the incident, but rather, whether the acts at issue "are in some way 'related to the performance of police duties.'" *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990) (citations omitted).[4]

_____

[4] The Court in *Gibson* held that the officer had not been acting under color of law because the officer had shot and killed someone after the Chicago Police Department had placed the officer on medical roll as mentally unfit for duty and had issued an order specifically directing the officer: (a) not to carry a firearm or other deadly weapon; and (b) not to exercise the power of

Indeed, "whether or not a police officer is off-duty does not resolve the question of whether he or she acted under color of state law." *Id.* at 1517 (quoted source omitted). Accordingly, the City's superficial analysis focused upon Glover's duty status is insufficient to warrant a finding in its favor on summary judgment.

For example, numerous courts have relied on the Milwaukee Police Department's "always on duty" policy as support for findings that an officer was taking police action even though off-duty and without the indicia of the office. *See, e.g., Davis v. Murphy,* 559 F.2d 1098, 1101 (7th Cir. 1977); *see also, Cameron,* 102 Wis. 2d at 451-52.

In *Estate of Thurman v. City of Milwaukee*, 197 F.Supp.2d 1141, 1147 (E.D. Wis. 2002), the Honorable Judge Lynn S. Adelman held that an off-duty Milwaukee Police Officer ("Miller") had acted under color of law when he shot and killed a man who had stolen his lawn mower. *Id.* at 1144. There, the facts demonstrated that:

> A group of neighborhood boys observed the incident. None of the boys heard Miller identify himself as a police officer or saw him display a badge. Miller was wearing shorts and had no shoes on.

*Id.* Nonetheless, the court, relying on the Milwaukee Police Department's "always on duty" rule, and the fact that Miller had used a department-issued weapon in the shooting, held "the evidence indicates that, although off duty, Miller meets the 'color of law' requirement." *Id.* at 1147.[5]

Other cases likewise confirm that an off-duty officer without the indicia of the office may be found to have acted under color of law when an "always on duty" policy

---

arrest or any other police power. 910 F.2d at 1512. Here, in stark contrast, Glover was fully authorized, and indeed required by the Milwaukee Police Department to exercise his power of arrest or any other police power, even when off-duty and without the typical indicia of the office as a result of his off-duty status.

[5] The City did not even dispute in that case that its off-duty officer was taking official police action. *Id.*

Case 2:07-cv-00204-WEC   Filed 07/01/09   Page 12 of 23   Document 94

requires the officer to take police action even when off-duty. In *Stengel v. Belcher*, 522 F.2d 438 (6th Cir. 1975), an off-duty officer intervened in a barroom dispute. Even though the officer was not in uniform and did not identify himself as an officer, the court held that he acted under color of law. The court relied on the fact that the officer was obligated to intervene under an "always on duty" rule and that he used weapons that department regulations required him to carry. 522 F.2d at 441.[6] Both such facts (the always on duty policy and use of a department approved weapon) exist in this case and would support a finding in favor of color of law.

In *Revene v. Charles County Commissioners,* 882 F.2d 870 (4th Cir. 1989), the court denied a motion to dismiss a Section 1983 claim that was based upon a claim that the color of law test could not be met because a deputy sheriff who had shot and killed an unarmed man was off-duty, not in uniform, and using his own vehicle at the time. The court held:

> [T]he lack of the outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol-car—are not alone determinative of whether a police officer is acting under color of state law.

*Id.* at 872 (citation omitted). The court also noted that the "always on duty" policy was evidence that an off-duty officer could be acting under color of state law. *Id.* at 873.

Further, when an off-duty officer attempts to arrest or apprehend a suspect, those actions support a finding that the officer was acting under color of law. For example, in *Pickrel v. City of Springfield*, 45 F.3d 1115 (7th Cir. 1995), the court held the fact that a police officer was not on duty at his primary job as a police officer, but was instead

---

[6] The Seventh Circuit has repeatedly cited *Stengel* as authority in cases addressing the issue of when an off-duty police officer acts under color of state law. *See Gibson*, 910 F.2d at 1516 n.10; *Davis*, 559 F.2d at 1101; *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995).

working as a private security guard at a McDonald's restaurant when he became involved in an altercation at the restaurant, did not preclude a finding that the officer acted under color of law. As in *Gibson*, the court specifically stated that "[a] police officer's being off-duty does not preclude him from acting under color of state law." *Id.* at 1118 (quoted source omitted). Rather, "[d]eciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Id.* There, the officer had displayed police power by attempting to detain and arrest a person who refused to obey the officer's orders to leave a McDonald's restaurant. *Id.* at 1117-18. The court denied the defendants' motion to dismiss alleging that the plaintiff could not prove color of law. *Id.* at 1119.

Accordingly, the fact that Glover was off-duty and the fact that he was without the indicia of the office as a result of his off-duty status are not dispositive as to whether he was acting under color of law.

### C. A Fact Finder Could Easily Conclude That Glover Was Acting Under Color of Law When He Shot And Killed Prado.

The evidence is more than sufficient for a fact finder to conclude that Glover acted under color of state law and in his capacity as a police officer during the Incident. Such evidence includes the following:

- The MPD's "always on duty" rule obligated Glover to respond to situations he believed required police intervention even while off-duty and without the indicia of the office. PPFF 22-24; Reiter Dec. at ¶¶ 4-5.

- The "always on duty" rule requires an officer to respond to a traffic violation. PPFF 82.

- Glover concluded after Prado accelerated past him that he was obligated to take police action and considered himself on duty. PPFF 21.

- Glover repeatedly identified himself as a Milwaukee Police Officer to Prado during the Incident.  PPFF 20, 28-30.

- Glover issued multiple police commands to Prado, such as "get on the ground" and "show me your hands".  PPFF 28-30; Reiter Dec. at ¶ 5.  Citizens overheard Glover issue commands.  PPFF 72.

- Glover shot Prado with a gun that the Department approved and authorized Glover to carry while off-duty.  PPFF 6-8.

- During the Incident, Glover yelled to citizens that he was an off-duty officer and needed help.  PPFF 37.

- Glover repeatedly told the 911 operator and bystanders at the scene that he was an off-duty officer.  PPFF 36-40.

As previously explained, the fact that Glover "did not have a police badge" during the Incident does not support a finding that Glover was not acting under color of law.  *See* City's Br. at 10.  The Department regulations did not require off-duty officers to carry a badge at the time of the Incident.  PPFF 5.  Chief of Police Nannette Hegerty admitted in her deposition that simply because in March 2005 an off-duty officer did not flash his badge, does not mean that the officer was not taking police action.  PPFF 5.[7]

Also supporting a finding that Glover acted under a color of law is his receipt of employment-related benefits in connection with the Incident.  When an officer seeks and obtains worker's compensation or other employment-related benefits, courts find this as

---

[7] Indeed, it is not uncommon for an officer to take police action while off-duty and without the indicia of the office due to off-duty status.  PPFF 74; Reiter Dec. at ¶ 4.  Numerous members of the Department deposed in this case testified that they had themselves taken official police action while off-duty during their employment with the Milwaukee Police Department.  All of these officers provided examples in which off-duty Milwaukee Police Officers took official police action pursuant to the "always on duty" rule even though they may not have had the indicia of the office at the time due to their off-duty status.  PPFF 75-81.  For example, former Deputy Chief of Police Brian O'Keefe once attempted to apprehend a suspect even though he had been driving his personal car and was wearing a suit and tie at the time.  PPFF 75-76.  This example confirms that simply because an officer does not display the visual indicia of the office, such as a uniform, badge or squad car, it does not mean that the officer is not taking police action.  In fact, the Milwaukee Police Department's "always on duty" policy requires members of the Department to take police action without the indicia of the office.

evidence that the officer was acting under color of law.  *Stengel,* 522 F.2d at 441 ("Officer Belcher also received workmen's compensation on the ground that he was 'in line of duty under circumstances relating to police duties.'").  Here, the evidence shows that Glover received such employment-related benefits from the Department in the form of Worker's Compensation medical expenses and he remained an employee of the Department receiving full-pay and benefits for more than a year after a use of force that the City now belatedly contends was the act of a private citizen.  PPFF 56, 58, 60.

Further, a fact finder could also find color of law by relying upon the evidence that in official Departmental reports, the Department adopted Glover's statements that he was acting as a police officer during the Incident and never claimed to the contrary until this litigation:

- As noted above, the Department submitted a Worker's Compensation claim on behalf of Glover for injuries he sustained during the Incident and Glover received Worker's Compensation benefits.  PPFF 56.  In the report, Sergeant Fahrenkrug noted that the "Employee" (*i.e.*, Glover) had been injured while "attempting to conduct a field interview of a motorist." PPFF 55.

- Glover remained a member of the Department with full pay, benefits, the right to carry an on-duty and off-duty firearm, and the right to wear the uniform of the Milwaukee Police Department until his death in May 2006. PPFF 57-63.

- In official departmental reports and correspondence, the Department repeatedly adopted Glover's statements that during the Incident he was taking official police action, including after the issuance of criminal charges by the District Attorney's office.  PPFF 48-55, 64-68.

- The Department allowed Glover to testify at the Inquest into the shooting in full uniform as a Milwaukee Police Officer regarding action he took as a police officer.  PPFF 69-70.

15

In sum, there is ample evidence from which a fact finder could conclude that Glover was acting under color of law during the Incident. Summary judgment should be denied as a result.

**D. The City's Motion For Summary Judgment Based On Color Of Law Is Not Only Factually Inadequate, It Is Based On An Incorrect Legal Theory.**

The City points to the Ninth Circuit's holding in *Anderson v. Warner*, 451 F.3d 1063, 1069 (9th Cir. 2006), and claims that to come under color of state law: (1) the defendant must have "pretend[ed] to act in the performance of his or her official duties," (2) with "the purpose and effect of influencing the behavior of others." City's Br. at 9. Relying on *Anderson*, the City argues that whatever Glover may have said, it was not done "'with the purpose and effect of influencing the behavior of' Prado" and that there is no evidence that Glover's display of authority affected Prado's behavior. City's Br. at 10-11. Again, the City is wrong.

First, the Seventh Circuit has not adopted the *Anderson* test and has not indicated that in Section 1983 cases, plaintiffs must show that the police officer acted with the purpose and effect of influencing the behavior of others. The Seventh Circuit focuses on whether the officer's acts are "related to the performance of police duties." *Gibson,* 910 F.2d at 1516. As previously explained, Glover acted pursuant to the MPD's "always on duty" rule and concluded that he had to take police action. He repeatedly identified himself as a police officer during and immediately after the Incident and he issued police commands to Prado. There is ample evidence to support a finding that Glover acted in the performance of his duties.

Second, even if the *Anderson* test applied in the Seventh Circuit, the fact finder could easily conclude that Glover intended to influence Prado's behavior and did so. Again, Glover repeatedly shouted "get on the ground" and "show me your hands" at Prado, and repeatedly identified himself as a police officer. After Prado crashed into parked cars and fled, Glover pursued Prado into the alley; he again told Prado to get down and to drop the weapon (there is evidence that Glover believed Prado had a weapon); and Glover repeatedly fired at Prado with the pistol the MPD had authorized him to carry. This is all clear evidence that Glover used his authority as a police officer to influence Prado's behavior. It defies reason for the City to suggest that firing a weapon at a suspect is not intended to influence the behavior or conduct of the suspect. Whether aiming at the suspect or firing a shot as a warning, the discharge of a weapon at a suspect can hardly be considered an act that is not intended nor likely to influence the behavior of the suspect. In fact, here it did influence Prado's behavior—he ran away.

Further, it is unreasonable to conclude that Prado's acts were motivated by anything other than a desire to get away from a police officer, and/or to avoid arrest and/or being shot. At the very least, a reasonable fact finder could conclude that Glover manifested his official capacity and Prado acted in response—by running for his safety and/or fleeing an officer to avoid arrest.

Nonetheless, the City argues that it is "pure speculation" whether Glover's statements influenced Prado's behavior because Glover testified he did not know if Prado heard him and Prado did not comply with Glover's orders. City's Br. at 11-12. Again, the Seventh Circuit has not held that an officer's purpose and success in influencing others is relevant to determining whether the officer acted under color of state law: the

key is whether the officer acted in a manner related to his police duties. *Gibson,* 910 F.2d at 1516.

Finally, even under *Anderson*, Prado's perception of Glover's capacity would not be dispositive. As previously explained, there is ample evidence that Glover acted with the purpose and effect of influencing Prado's behavior: specifically, Glover was attempting to arrest Prado and Prado was attempting to get away from Glover and avoid being shot.[8] *Anderson*, 451 F.3d at 1069.

In short, the fact finder must weigh the evidence and determine what really happened during the Incident before it can be determined whether Glover acted under color of state law. This issue cannot be decided at the summary judgment stage.[9]

---

[8] In addition to *Anderson*, the City cites *Hughes v. Meyer*, 880 F.2d 967 (7th Cir. 1989), *Haines v. Fisher*, 82 F.3d 1503 (10th Cir. 1996), and *Almand v. DeKalb County*, 103 F.3d 1510 (11th Cir. 1997), in support of its position that Glover did not act under color of state law. City's Br. at 6-8. None of these cases is on point. In *Hughes*, plaintiffs alleged that a Wisconsin Department of Natural Resources game warden had provided false information to other law enforcement officers regarding a confrontation between the warden and a landowner. The confrontation did not involve the game warden's duties, and the court concluded that the warden had passed on the information at issue in his capacity as a private citizen. 880 F.2d at 971-72. Here, by contrast, there is ample evidence that Glover acted as a police officer during the Incident. In *Haines*, officers engaged in a prank while off duty. Unlike Glover's actions, the *Haines* prank was not related to the officers' police duties or authorized by police department regulations in any way. Unlike Glover, the officers did not display any signs of police authority: rather they disguised themselves as robbers. 82 F.3d at 1505-06, 1508. In *Almand,* the officer visited the plaintiff to discuss matters related to police business but in an incident that the court determined was completely separate from the first incident, forced his way into the plaintiff's home and sexually assaulted her. Unlike Glover, the officer during the second incident did not hold himself out as performing police activities in any way. 110 F.3d at 1512, 1514-15.

[9] Whether a police officer acted under color of state law is a mixed question of fact and law. The jury must determine the facts related to the Incident and the Court must determine based on such findings of fact whether Glover acted under color of state law. *See Allbright v. Longview Police Dep't*, 884 F.2d 835, 838 (5th Cir. 1989) (stating that whether conduct constitutes state action "depends upon the specific facts and circumstances surrounding the challenged action"); *Moore v. City of Paducah*, 890 F.2d 831, 834-35 (6th Cir. 1989); *Duke v. Smith*, 13 F.3d 388, 392 (11th Cir. 1994).

18

## II. THERE IS NO BASIS TO DISMISS PLAINTIFFS' *MONELL* CLAIM AGAINST THE CITY BECAUSE, AS SHOWN ABOVE, COLOR OF LAW CANNOT BE DECIDED AT THE SUMMARY JUDGMENT STAGE.

Plaintiffs have made a *Monell* claim that the City failed to adequately investigate and control instances of conduct such as Glover's conduct in this case. *See* Complaint ¶¶ 81-89; *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). The City argues that if the Court determines as a matter of law that Glover did not act under color of state law, then Plaintiffs' *Monell* claim must also fail. City's Br. 13. The City does not contend that there are insufficient facts to support a *Monell* claim or that summary judgment is appropriate as to such claim for any other reason. *Id.* Indeed, as demonstrated above, the Department's approval of Glover's actions as those of a police officer, and not a private citizen, demonstrate precisely why an officer like Glover could use excessive force and still be acting under color of law.

The City is correct that in the Seventh Circuit Plaintiffs' *Monell* claim would fail if Glover were found not to have acted under color of state law. *See, e.g., Treece v. Hochstetler,* 213 F.3d 360, 364 (7th Cir. 2000). However, as explained above, there is ample evidence from which a fact finder could conclude that Glover did act under color of state law and did so with the Department's approval that his actions were those of a police officer. Accordingly, for the same reason that Plaintiffs' individual claim against Glover should not be dismissed on summary judgment, Plaintiffs' *Monell* claim against the City should not be dismissed either.

## III. THERE IS NO BASIS TO DISMISS PLAINTIFFS' PUNITIVE DAMAGES CLAIM DUE TO THE FACT THAT GLOVER IS DECEASED.

Lastly, the City argues that Plaintiffs' punitive damages claim (*see* Complaint ¶¶ 90-92) fails as a matter of law because "punitive damages … are not generally

19

awarded against a decedent." City's Br. at 14; citation omitted. The City does not contend that the evidence would not support an award of punitive damages. It contends only that punitive damages may not be awarded where, as here, the state actor is deceased. The City's argument is erroneous.

The United States Supreme Court has made clear, and the City does not dispute, that punitive damages claims are available in Section 1983 actions. *Smith v. Wade,* 461 U.S. 30, 35 (1983); *see also Estate of Arana v. City of Chicago,* No. 89-C-4179, 1992 WL 162965 at *2 (N.D.Ill. July 2, 1992). The City contends that punitive damages are foreclosed here because Glover is deceased. The authorities the City relies upon are entirely inapposite, however, because none of the City's authorities involve a Section 1983 claim. *Savarese v. Agriss,* 883 F.2d 1194, 1205 n.15 (3rd. Cir. 1989) (stating without discussion that punitive damages were foreclosed against decedents as a general rule); *Novak v. Callahan*, 681 F.2d 1295, 1301 & n.5 (11th Cir. 1982) (stating in a bankruptcy case that an award of punitive damages would not deter the deceased debtor and would injure other creditors); *Barnes v. Smith*, 305 F.2d 226, 231 (10th Cir. 1962) (stating in an auto accident case that punitive damages would not deter a deceased defendant); *Restatement (Second) of Torts* § 908 cmt. a (1977) (general statement of rule; no reference made to Section 1983).

The Seventh Circuit, however, has made clear that the rule on which the City relies does not apply in Section 1983 actions. *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1105 (7th Cir. 1990); *Bell v. City of Milwaukee*; 746 F.2d 1205, 1239-41 (7th Cir. 1984), *overruled on other grounds, Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *see also Arana*, 1992 WL 162965 at *2.

In *Bell*, the court held that a victim's estate may recover loss-of-life damages and punitive damages notwithstanding the existence of state statutes precluding such recovery by a victim's estate in a state tort action. 746 F.2d at 1239-41. The Court held that preventing the recovery of punitive damages due to state tort law restrictions would seriously undermine the deterrent effect of Section 1983:

> To disallow punitive damages in Section 1983 actions solely on the basis of restrictive state tort law would seriously hamper the deterrence effect of Section 1983.

*Id.* at 1241.

In *Graham*, the Seventh Circuit rejected an argument that loss-of-life damages should not be awarded against a deceased police officer's estate in a Section 1983 case:

> **The fact that Mueller [the police officer] can no longer be deterred is quite irrelevant. The deterrence objective of § 1983 damages is directed at a broader category of persons than the individual perpetrator alone.** In *Bell*, this court stated that loss of life damages are intended to have a deterrent effect on "potentially unconstitutional *actors*." 746 F.2d at 1239 (emphasis added). No specific deterrence could have been accomplished in *Bell* because in that case, the offending officer had resigned from the force. Like Mueller, the officer in *Bell* was no longer in a position to repeat his unconstitutional acts.

915 F.2d at 1105 (emphasis added).

Likewise, in *Arana*, the court explicitly held that punitive damages may be recovered from a deceased police officer's estate in a Section 1983 action. *Arana* at *2. It held that restricting punitive damages merely because the state actor was deceased "would serve to undercut the deterrence aspect of [Section] 1983" and that Section 1983's deterrence goal extends to all "potentially unconstitutional actors." *Id.* (citation omitted). The court, therefore, denied a motion to dismiss the punitive damages claims. *Id.*

In short, punitive damages claims are, indeed, allowed under Section 1983 when the state actor is deceased. Thus, Plaintiffs' claim for punitive damages should not be dismissed at the summary judgment stage.

## CONCLUSION

For all of the reasons set forth above, the Court is respectfully requested to deny the City's Motion for Partial Summary Judgment and schedule this case for trial.

Dated: July 1, 2009.

Respectfully submitted:

**DEWITT ROSS & STEVENS S.C.**

By:   s/Megan A. Senatori
     Eric A. Farnsworth (#1017954)
     Howard B. Schoenfeld (#1014052)
     Megan A. Senatori (#1037314)
     13935 Bishop's Drive, Ste. 300
     Brookfield, WI 53005

     **ATTORNEYS FOR PLAINTIFFS**