UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTRELLA ADELA JAVIER and
DANIELA JAVIER, minor children of
Wilbert Javier Prado, appearing by their
Guardian ad Litem, Ernesto Romero,

ESTATE OF WILBERT JAVIER PRADO,
by PATRICIA D. JURSIK, Special
Administrator,

       Plaintiffs,

  v.                               Case No. 07-C-0204

CITY OF MILWAUKEE and
ESTATE OF ALFONZO C. GLOVER,

       Defendants.

---

**DECISION AND ORDER ON PLAINTIFFS' MOTION FOR NEW TRIAL
REGARDING SCOPE OF EMPLOYMENT CLAIM**

---

On August 11, 2010, the jury in this case, which case was bifurcated for trial, returned a verdict in the first phase of the trial finding: (1) that the defendant, Alfonzo C. Glover ("Glover") used unreasonable force against Wilbert Javier Prado ("Prado"); (2) that because of Glover's use of unreasonable force, Prado was harmed (indeed, Prado was shot and killed by Glover); and (3) that at the time Glover used unreasonable force against Prado, Glover was acting under color of law. However, the jury also found that, at the time Glover used unreasonable force against Prado, Glover was not acting within the scope of his employment as a City of Milwaukee police officer.

With respect to damages, the jury awarded $250,000 to Daniela and Estrella Javier for the loss of the society and companionship of their father, Prado. The jury awarded $600,000 to Prado's estate

for Prado's pain, suffering and loss of the enjoyment of his life. Finally, the jury awarded to Prado's estate and against Glover's estate punitive damages in the amount of $1,000,000.

Thereafter, on August 13, 2010, at the conclusion of the second phase of the trial (dealing with the plaintiffs' *Monell* claim against the City of Milwaukee), the jury found that the plaintiffs failed to prove that the City of Milwaukee, through its police department, maintained an official policy that allowed off-duty police officers to use unreasonable force while acting under color of law. Stated another way, the jury found for the defendant City on the plaintiffs' *Monell* claim. On August 27, 2010, judgment was entered on the jury's two verdicts.

On September 23, 2010, the plaintiffs filed a motion for a new trial "solely on their indemnity claim against the City of Milwaukee under Wis. Stat. § 895.46."[1] Their motion is predicated on the overarching assertion that "[t]he jury was incompletely and improperly instructed on Plaintiffs' scope of employment claim." Specifically, the plaintiffs assert that:

1. The Court allowed the jury to use the criminal charges filed against Officer Glover to find his actions outside the scope of his employment.

2. The Court failed to instruct the jury that unreasonable force, intentional torts, and even crimes can be committed within the scope of employment.

3. The Court's form of special verdict question on scope of employment improperly focused the jury on the outcome of the act (i.e., unreasonable force) rather than the nature of the services rendered by police officers.

4. The Court failed to submit to the jury, and subsequently curtailed evidence, as to Plaintiffs' theory that the City of Milwaukee had ratified the actions of Officer Glover, thereby bringing his actions within the scope of employment.

(Pls.' Br. at 2.)

---

[1] The plaintiffs make clear, at page 3 of their opening brief, that they do not seek a new trial on the *Monell* claim.

2

The plaintiffs have moved for a new trial pursuant to Fed. R. Civ. P. 59(a). Such motions are left to the sound discretion of the trial judge. *See Gasperini v. Ctr. for Humanities, Inc.* 518 U.S. 415, 433 (1996) ("the authority of trial judges to grant new trials" is large); *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (noting that the authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court.")

One of the grounds upon which a motion for a new trial can be based is erroneous jury instructions. *See, e.g., Dazenko v. James Hunter Mach. Co.*, 393 F.2d 287, 291 (7th Cir. 1968); *Brown v. M & M/Mars*, 883 F.2d 505, 512-14 (7th Cir. 1989). Once again, however, the trial court is granted discretion in deciding a motion on such grounds. Even more to the point, in *Alcala v. Emhart Industries, Inc.*, 495 F.3d 360 (7th Cir. 2007) the Seventh Circuit stated the following:

> This court "review[s] the district court's decision concerning jury instructions under the abuse of discretion standard." *Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir. 1999). Moreover, "[o]n a motion for a new trial based on improper instructions to the jury, we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *Id.*

*Alcala*, 495 F.3d at 363.

Bearing these principles in mind, the court will address each of the plaintiffs' arguments in turn. First, the plaintiffs claim that "[t]he Court allowed the jury to use the criminal charges filed against Officer Glover to find his actions outside the scope of his employment." Second, the plaintiffs claim that "[t]he Court failed to instruct the jury that unreasonable force, intentional torts, and even crimes can be committed within the scope of employment." Because these first two claims are inter-related, the court will address them together.

According to the plaintiffs, the court erred by admitting into evidence the fact that Glover had been charged with homicide and perjury and then not properly instructing the jury on how the jury should treat the criminal charges during its deliberations. Specifically, they argue:

3

> [R]ather than instructing jurors they were prohibited from considering the criminal charges to find Officer Glover's actions outside the scope of employment, jurors were merely instructed they could not "substitute" the decision of the Milwaukee County District Attorney's Office for their own decision. In other words, the jury was told the exact opposite of what Plaintiffs had requested: Jurors were told they *could* consider the criminal charges in their deliberations, they just could not blindly accept the District Attorney's charging decision without examination. More important, the jury was *not* instructed that unreasonable force, intentional torts, and even crimes can be acts committed within the scope of employment. The Court instead gave only the Wisconsin pattern instruction 4035 "Servant: Scope of Employment" without modifying it to suit the facts of this particular case.

(Pls.' Br. at 5-6.)

The court instructed the jury as follows with respect to the evidence of Glover's criminal charge:

> In this case you have heard evidence that Alfonzo Glover was criminally charged with homicide and perjury by the Milwaukee County District Attorney's Office in May 2006 in connection with the death of Mr. Prado. Alfonzo Glover was never tried on those charges because he died before the case was concluded. You may not in any way substitute the decision of the Milwaukee County District Attorney's Office for your own decision in this case.

(Dkt. 155 at 7.)

Relatedly, the plaintiffs argue that, because of the court's limiting instruction as to how the jury was to consider the fact of Glover's being criminally charged, it was imperative that the jury be instructed that one could commit a crime and still be within the scope of employment. Specifically, the plaintiffs argue:

> The importance of the jury receiving a complete and correct statement of the law concerning scope of employment took on heightened importance given the form of the Court's limiting instruction. Plaintiffs, therefore, asked the Court to instruct the jury as to the law that unreasonable force, intentional torts, and even crimes can be committed within the scope of employment. The City never argued, and the Court never held, that Plaintiffs' proposed instruction was an incorrect statement of the law. Instead, the Court declined to give Plaintiffs' requested instruction, stating only that the instruction was "not necessary."
>
> However, as shown below, Plaintiffs' requested instruction *was* necessary. In fact, it was critical to Plaintiffs' indemnity claim because, without it, the jurors, as lay persons, were allowed to conclude that Officer Glover could not have been acting

4

> within the scope of his employment as a police officer because he had used unreasonable force and had been criminally charged for his actions. In other words, once the jury decided in Plaintiffs' favor that the amount of force used was unreasonable, Plaintiffs' fate was sealed on the scope of employment question, because the jury lacked critical information about the law.

(Pls.' Br. at 6) (internal citation omitted).

I disagree with the plaintiffs. Far from allowing the jury to conclude that, because he was criminally charged, Glover could not have been within the scope of his employment, the court's instruction made clear to the jurors that they could <u>not</u> conclude that Glover's being criminally charged necessarily meant that he was not acting within the scope of his employment. A fair and commonsense reading of the court's instructions, as a whole, shows that the jury was instructed that the Milwaukee County District Attorney's Office's decision to charge Glover with various crimes was not to be used by the jury "in any way" in deciding whether Glover acted within the scope of his employment when he shot Prado (i.e., either to show he was <u>not</u> acting within the scope of his employment or to show that he <u>was</u> acting within the scope of his employment). The court made clear to the jurors that they alone were to decide the scope of employment question and that they were to do so based solely on the evidence presented to them at the trial, not based upon what some other person or entity may have decided to do in an entirely different context and when applying entirely different legal principles.

Furthermore, the jury was instructed correctly and thoroughly on what constitutes "scope of employment" under Wisconsin law. The jury was instructed, in part, as follows:

> An employee may be found to have acted within the scope of his employment as long as the employee was at least partially actuated by a purpose to serve the employer. There is no requirement that serving the employer must be the employee's only purpose or even the employee's primary purpose. Rather, an employee's conduct is not within the scope of his or her employment if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purpose (that is, the employee stepped aside from the prosecution of the employer's business to accomplish an independent purpose of his or her own."

5

> Such deviation or stepping aside from the employer's business may be momentary and slight, measured in terms of space and time, but if it involves a change of mental attitude or purpose in serving his personal interests, or the interests of another, instead of his employer's, his conduct falls outside the scope of his employment.

(Dkt. 155 at 11.)

The parties were free to argue that, in assessing the scope of employment issue, it did not matter whether the conduct engaged in by Glover was criminal or intentionally tortious. Indeed, that was precisely why the jury was instructed that it should not "in any way substitute the decision of the Milwaukee County District Attorney's Office for [its] own decision in this case." The only issue that mattered was whether Glover was acting within the scope of his employment, as that concept is defined under Wisconsin law, when he shot Prado. In my opinion, to have instructed the jury in the fashion proposed by the plaintiffs would have placed undue importance on, and drawn undue attention to, the decision of the District Attorney's Office to charge Glover with homicide and perjury. It was the jury's duty, and the jury's alone, to decide whether the plaintiffs had proven that Glover was "at least partially actuated by a purpose to serve [his] employer" when he shot Prado, regardless of whether some third party thought he had committed a crime.

The plaintiffs next assert that "[t]he Court's form of special verdict question on scope of employment improperly focused the jury on the outcome of the act (i.e., unreasonable force) rather than the nature of the services rendered by police officers." However, they do not present or develop in their briefs any argument directly in support of this assertion (except as they present arguments in support of their first two assertions, as set forth above). Thus, the court has no need to address singularly this particular assertion.

Finally, the plaintiffs assert that "[t]he Court failed to submit to the jury, and subsequently curtailed evidence, as to Plaintiffs' theory that the City of Milwaukee had ratified the actions of

6

Officer Glover, thereby bringing his actions within the scope of employment." The plaintiffs argue that

> [t]he Court never held that there was insufficient evidence to submit ratification to the jury. Rather, the Court held only that Plaintiffs' ratification theory would conflict with the principles of municipal liability under 42 U.S.C. § 1983. In so ruling, Plaintiffs were erroneously deprived of their right to present one of their theories regarding scope of employment to the jury and the failure was . . . tantamount to directing a verdict for the City on this question.

(Pls.' Br. at 15-16.)

The plaintiffs sought to have the court instruct the jury on the legal principle of ratification. Ratification can have the net result of imposing liability on a person or entity, which liability might not otherwise be imposed, for the acts of another. Applying the concept of ratification in the context of § 1983 liability is particularly nettlesome. This is because there is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (concluding that a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). Because ratification speaks in terms of a principal's liability, this theory could inappropriately render the City liable by virtue of the fact that one of its employees violated a person's federal rights. *See id.* at 691; *see also* 3 Am. Jur. 2d Agency § 200 (2d ed. 2010) ("the principal on whose behalf the originally unauthorized act was done is bound and liable to the same extent as if the act had been done in the first instance with the principal's authority").

In the instant case, the City of Milwaukee could not be held directly liable for the acts of Glover. The City could be held directly liable for only its own actions. Indeed, that is precisely why the court bifurcated the trial – trying Glover's § 1983 liability first and then, if necessary (which it was), trying the City's § 1983 liability. In the first phase of the trial it was my intention to keep the jurors' attention focused on the actions of Glover. In my opinion, instructing the jurors on the principle of ratification would have run the serious risk of hopelessly confusing them. Indeed, to

7

have done so would have come perilously close to instructing the jury that the City could be held vicariously responsible for the actions of Glover on the night in question. And that would have been error.

That having been said, the parties were not prevented from introducing evidence on and arguing (as they did) about what the City's actions after the shooting said concerning its view on whether Glover's actions were indeed committed while within the scope of his employment. For example, the plaintiffs introduced evidence that Glover was allowed to wear his police uniform while testifying at the inquest; that he was kept on the police force (albeit on station house duty) and was allowed to continue to carry his firearm until he was criminally charged; and, that he received worker's compensation payments for injuries he sustained on the night of the shooting. It was for the jury to decide, in part upon this evidence, whether the City's own actions demonstrated that the City itself viewed Glover's actions to be within the scope of his employment, and if so, thereby provide the jury reasonable justification to find likewise.

This was a hard-fought case. From "day one" it was riddled with emotion and challenging evidentiary issues. After all is said and done, I am satisfied that the parties received a fair trial and that the jury was instructed properly. Accordingly, and for all of the foregoing reasons, the plaintiffs' motion for a new trial will be denied.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for a new trial regarding the scope of employment claim be and hereby is **DENIED**.

**SO ORDERED** this 9th day of November 2010 at Milwaukee, Wisconsin.

                                               **BY THE COURT**:

                                               s/ William E. Callahan, Jr.
                                               WILLIAM E. CALLAHAN, JR.
                                               United States Magistrate Judge