UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTRELLA ADELA JAVIER and
DANIELA JAVIER, minor children of
Wilbert Javier Prado, appearing by their
Guardian *ad litem*, Ernesto Romero,
ESTATE OF WILBERT JAVIER PRADO, by
PATRICIA D. JURSIK, Special Administrator,

      Plaintiffs,

  -vs-             Case No. 07-C-204

CITY OF MILWAUKEE,
ESTATE OF ALFONZO GLOVER,

      Defendants.

---

## DECISION AND ORDER

---

  Alfonzo Glover, an off-duty Milwaukee police officer, killed Wilbert Javier Prado during a late-night encounter that began when Prado tailgated Glover as he was driving home after his shift. An inquest jury found that Glover's actions were justified, but the Milwaukee County District Attorney eventually brought charges against Glover for homicide and perjury. On the day of his arraignment, Glover committed suicide. After a remand from the Seventh Circuit, the sole issue in this case is whether Glover acted within the scope of his employment when he shot and killed Prado. *Javier v. City of Milwaukee*, 670 F.3d 823 (7th Cir. 2012). If Glover was acting within the scope of employment, the City is on the hook for a $1.85 million judgment. Wis. Stat. § 895.46(1)(a). Trial is scheduled for October 15, and the parties have filed motions in limine, which the Court discusses herein.

## Plaintiffs' motions

***First Motion*: To prohibit testimony, evidence or argument regarding the criminal charges filed against Officer Glover**

At the original trial before Judge Callahan, the plaintiffs did not object when the City informed the jury that Glover had been charged with homicide and perjury in connection with Prado's death and the inquest. "To the contrary, [the plaintiffs] thought the evidence surrounding the filing of criminal charges bolstered their ratification theory. They wanted to argue that the City failed to repudiate – and therefore ratified – Glover's conduct by keeping him on the payroll until criminal charges were filed fourteen months after the shooting." *Javier*, 670 F.3d at 827. However, the plaintiffs proposed the following limiting instruction regarding the jury's use of the criminal charges as evidence: "A police officer can be acting under the color of law and within the scope of employment even if the officer acts intentionally or criminally." The plaintiffs also requested a modified scope-of-employment instruction: "A police officer can be acting within the scope of his employment even if the officer acted intentionally or criminally, and even if the officer's use of force was excessive or the officer misused his authority to use force." The Seventh Circuit found that the failure to give these instructions resulted in reversible error. "The jury needed to hear *from the court* that the scope-of-employment concept recognizes that an officer can exceed or abuse his authority – even intentionally or criminally – and still be acting within the scope of employment." *Javier*, 670 F.3d at 832 (emphasis added).

The Seventh Circuit also found that the plaintiffs were not entitled to a ratification instruction, and so it made the following observation in a footnote:

> With the ratification theory out of the case, the rationale for admitting the evidence of the homicide and perjury charges largely evaporates. The City argued that the evidence of the criminal charges was relevant to show that the City did not expressly or impliedly adopt Glover's actions because the Police Department suspended him immediately after the charges were filed. For their part the Javiers wanted this evidence admitted in support of their argument that the City ratified Glover's conduct by failing to repudiate it during the fourteen months after the shooting. This reasoning – on both sides – strikes us as implausible. In any event, it no longer applies. The City also argued that the evidence of the criminal charges tended to show that Glover had an incentive to lie during the inquest. This is simply illogical. The possibility that Glover might be criminally charged in Prado's death existed at the time of the inquest; that was the point of the inquest, and it's fine for the jury to know that much. That the district attorney in fact issued charges (albeit much later, and against the recommendation of the inquest jury) has no bearing on the *ex ante* question of Glover's state of mind when he testified at the inquest. Moreover, given the powerful effect of this evidence on the mind of the average juror, any remaining relevance (and we can't think of what that might be) seems substantially outweighed by the risk of unfair prejudice and the potential to mislead the jury. *See* Fed. R. Evid. 403.

*Javier* at 823 n.8. In light of this lengthy explanation, the City rightly concedes that it cannot introduce evidence that criminal charges were filed against Prado. However, the City objects insofar as the plaintiffs' motion could be construed as requesting an order which precludes the City from arguing that the shooting was unjustified or that Glover was untruthful at the inquest. The Court agrees with the City in this latter respect. The entire theory of the City's defense is that Glover was actuated by a personal motive, not by a purpose to serve his employer – and if Glover was acting out of a personal motive, the necessary implication is that he was lying at the inquest hearing. Nothing in the Seventh Circuit's decision precludes this line of defense.

-3-

The Seventh Circuit did criticize the City Attorney's references to the incident as a "murder," and the plaintiffs seize upon this language to argue that the City cannot do so in the re-trial. *Javier* at 831 ("At the beginning of his opening statement, the Assistant City Attorney told the jury that Glover had 'maybe murdered Wilbert Prado.' . . . In his closing argument, counsel set up a false dichotomy on the scope-of-employment issue, arguing: 'The City of Milwaukee['s] interest is not served by murdering someone[.] [T]he City of Milwaukee's interest is served by enforcing the law[;] it is not served by a personal argument'"). The Seventh Circuit's criticism was related to the failure to give the jury instructions cited above and also the use of evidence that Glover was criminally charged for his conduct. "This approach to the evidence of the criminal charges was legally improper and highly misleading. *The City conveyed the incorrect impression that because Glover had been criminally charged, he could not have been acting within the scope of his employment*. The two are not mutually exclusive. Without an instruction telling the jury that the law is precisely the opposite – that Glover's conduct could be criminal, excessive, and outside his authority and still be within the scope of his employment – the jury was missing a critical 'relevant legal principle[]' and was likely confuse[d] or mis[led].'" *Id.* at 831-32 (emphasis added) (internal citations omitted). Standing alone – that is, in the absence of any evidence that Glover was criminally charged for his conduct – the Court does not consider the City's use of the terms murder, homicide or perjury to be unduly prejudicial, especially in light of a jury instruction which makes clear that police officer can be acting within the scope of employment "even if the officer acts intentionally or criminally." Nonetheless, the Court

-4-

does not take the City's opposition to this motion as an insistence that it be allowed to refer to Glover's conduct as murderous, homicidal, or perjurious. In an abundance of caution, the City should refrain from using these terms in the sense that they could possibly imply criminal or unlawful conduct.

***Second Motion*: To prohibit testimony, evidence or argument that because Officer Glover used excessive force, he was not acting in the scope of employment**

As the Seventh Circuit observed, this is an "excessive-force claim against a police officer; in this context, the scope-of-employment inquiry carried a significant risk that jurors would mistakenly intuit that if the officer used excessive force, he must also have acted outside the scope of employment." *Javier* at 825. However, the fact that a police officer *can* be acting within the scope of employment when he is using excessive force does not mean that the use of excessive force is irrelevant to the scope of employment inquiry. If (as here) the police department forbids the use of excessive force (and the use of deadly force under certain circumstances), a police officer is not acting within the scope of employment by virtue of "rendering services in obedience to the express orders or direction of his employer." *Javier* at 830 n.5, 833, Appendix (modified Wisconsin pattern jury instruction given at trial). Of course, Glover still could have been acting within the scope of employment even if he went beyond the bounds of these regulations and used excessive force. The jury instructions given at trial will make that clear.

-5-

***Third Motion*: To prohibit testimony, evidence or argument to the effect that Officer Glover was not acting in the scope of his employment because he was off duty and/or did not have indicia of the office**

Plaintiffs argue that Glover's on or off duty status is irrelevant because there is a departmental regulation requiring officers to take police action even when they are off-duty. The City agrees, but argues that the absence of any verbal indicia of identification ("police") or commands ("stop") is still relevant to the scope of employment inquiry. The Court agrees and will grant the motion with the exception noted.

***Fourth Motion*: Precluding any testimony, evidence or argument regarding the amount or nature of the damage award in the first trial or the effect of a favorable verdict in this trial on the taxpayers of the City of Milwaukee**

***Fifth Motion*: Precluding any testimony, evidence or argument regarding Officer Glover's suicide, including the date of his death (from which the jury could infer a suicide)**

***Sixth Motion*: Precluding any testimony, evidence or argument regarding the City's placement of Officer Glover on station house duty or its subsequent suspension of Officer Glover**

***Seventh Motion*: Granting plaintiffs leave to read more than five pages of inquest testimony to the jury for Officer Glover because he is a key witness, he is deceased, the testimony has already been ruled admissible, and he is "unavailable" within the meaning of Fed. R. Evid. 804(a)(4) and there is good cause to exceed the five-page limit imposed by Civil L.R. 16(c)(1)(F)**

***Eighth Motion*: Precluding any testimony, evidence or argument based upon Mr. Prado's immigration status (including any alias he may have used)**

***Ninth Motion*: Precluding any testimony, evidence or argument based upon any prior bad acts and/or criminal convictions of Mr. Prado because he is not testifying as a witness in this case and Officer Glover and Mr. Prado did not know one another (and therefore Officer Glover could not have known at the time of the incident about any prior bad acts and/or criminal convictions in Mr. Prado's past)**

*Tenth Motion*: **Precluding the City of Milwaukee from offering the testimony of any expert witness, including any in-house experts, because the City failed to disclose any experts during discovery**

*Eleventh Motion*: **Excluding witnesses expected to testify at trial from hearing the testimony of other witnesses, as is required upon request by Fed. R. Evid. 615**

The City does not oppose any of these motions, which will be granted.

*Motion Twelve*: **To grant plaintiffs permission to read portions of the deposition and/or inquest testimony of any other witness who is unavailable**

Both parties anticipate that many of their witnesses will be unavailable at trial given the passage of time since the shooting occurred in 2005. The plaintiffs brought this motion to alert the Court and the City to the issue, which the Court can deal with on an as-needed basis during the trial.

## City's Motions

*First Motion*: **Any testimony, evidence or argument concerning any assignment of Alfonzo Glover following the March 6, 2005 shooting incident or any failure to discipline or discharge him up to the time of the criminal charges being issued against him**

This plaintiffs do not oppose this motion, so long as the order applies to both parties, the City does not open the door for such inquiry at trial, and the order extends to prohibiting any evidence concerning the City's decision to suspend Officer Glover once criminal charges were issued against him. The plaintiffs' final caveat was the subject of its sixth motion in limine, which the City did not oppose. Therefore, the Court will grant this motion, with the exceptions as noted.

*Second Motion*: **Any testimony, evidence or argument concerning any leave request of Glover following the shooting incident**

-7-

The plaintiff do not oppose this motion so long it applies to both parties and the City does not open the door at trial. With these exceptions, the Court will grant this motion.

***Third Motion*: Any testimony, evidence or argument concerning any claim for workers' compensation benefits or report of any accident supporting any such claim by Glover arising out of the shooting incident**

The City argues that this evidence is not relevant to the issue of Glover's intent at the time of the shooting. The standard for a compensable workers' compensation injury is broader than the common law "scope of employment" doctrine. *Empl. Mut. Liability Ins. Co. v. Dep't of Indus., Labor & Human Relations*, 190 N.W.2d 907, 911 (Wis. 1971). Accordingly, Glover's claim that his injury occurred while "performing service growing out of and incidental to his employment," Wis. Stat. § 102.03(1)(c)1, is not dispositive but is still relevant to the scope of employment inquiry because it tends to show that Glover was "actuated by a purpose to serve his employer in doing what he is doing." *Javier* at 833. Moreover, this evidence was admitted at the initial trial, and Judge Callahan's ruling on this issue is the law of the case. *HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009).

***Fourth Motion*: Any testimony, evidence or argument from plaintiffs' expert, Lou Reiter**

Judge Callahan issued an extensive ruling on the subject of Lou Reiter's testimony. The City argues that Mr. Reiter's testimony is no longer relevant given that the re-trial will be confined to the scope of employment issue, but this is clearly not the case. ECF No. 144, July 27, 2010 Decision and Order at 7 ("In my opinion, Mr. Reiter's testimony on 'Contempt of Cop' will assist the jury in determining whether Glover acted within the scope of

-8-

employment during the events in question"). The City offers no justification as to why the Court should re-visit Judge Callahan's ruling, which the Court will adopt in its entirety for purposes of the re-trial. *HK Sys.*, 553 F.3d at 1089.

***Fifth Motion*: Any testimony, evidence or argument relating to any events or description of witnesses at the inquest that arose out of the shooting incident**

In this motion, the City references Exhibit 53, which the plaintiffs state they will not be introducing at the re-trial. Aside from that, the Court agrees with the plaintiffs that the City's motion is too broadly worded to grant relief *in limine*.

***Sixth Motion*: Any testimony, evidence or argument relating to the preliminary use of force report and placement of Glover on administrative leave submitted by Chief Hegarty to the Board of Fire and Police Commissioners**

Here, the City references Exhibit 65, which the plaintiffs say they will not be introducing at the re-trial. Therefore, the Court will grant this motion so long as it applies to both parties and the City does not open the door at trial.

***Seventh Motion*: Any testimony, evidence or argument relating to the MPD press release from Chief Nanette Hegerty entitled "Off-Duty Officer Involved in Fatal Shooting"**

The City references Exhibit 66, which the plaintiffs say they will not be introducing at the re-trial. Therefore, the Court will grant this motion so long as it applies to both parties and the City does not open the door at trial.

***Eighth Motion*: The photographs of Officer Glover testifying at the inquest in a Milwaukee Police uniform**

The City argues that this evidence is irrelevant and prejudicial, but the fact that Officer Glover wore his police uniform to an inquest hearing about him shooting Javier

-9-

Prado is relevant to whether he was "actuated by a purpose to serve his employer" at the time of the shooting. Moreover, Judge Callahan allowed the photograph to be shown at the initial trial, which is now the law of the case. *HK Sys.* at 1089.

***Ninth Motion*: Any testimony, evidence or argument referring to the incident as an "officer-involved shooting"**

The plaintiffs agree to the City's request, with the caveat that terms "homicide investigation" or "Homicide Division" should be also be excluded. To provide a neutral term to the jury, plaintiffs suggest that the investigation should be referred to as a "death investigation" and that the division of the MPD that investigated the shooting should be referred to as the "Fatal Shooting Division." The plaintiffs' supplemental request echoes the Court's concern, discussed *supra*, that the parties should refrain from using the terms murder, homicide or perjury in the sense that they could possibly imply criminal or unlawful conduct. The Court agrees with the suggested terminology, so the Court will grant the City's motion subject to the plaintiffs' counter-suggestion. However, since the City was not given the opportunity to respond to the plaintiffs' counter-suggestion, the Court would re-visit this issue at the request of the City.

***Tenth Motion*: Any testimony, evidence or argument relating to the verbal exchange between Officer Carmello Patti, one of the first responding officers, and Alfonzo Glover in which Glover asked to the effect of what he should do and Patti told him to get a union representative**

The City argues that this evidence is unfairly prejudicial since the jury is likely to assume that union representation would only be available upon a determination that the officer was acting within the scope of employment. For many of the reasons already stated,

-10-

this type of evidence is clearly relevant, and any confusion can be addressed on cross-examination.

***Eleventh Motion*: Any testimony, evidence or argument relating to any training with respect to the requirement that Milwaukee police officers take appropriate police action, even when off duty**

The plaintiffs will introduce evidence suggesting that police officers receive little to no training on what they should do when they are off-duty. Instead, police officers are merely told that they must act no matter what. Accordingly, and once again for many of the reasons already stated in addressing the various motions before the Court, this evidence is relevant to Glover's intent when he shot and killed Javier Prado.

***Twelfth Motion*: Any testimony, evidence or argument relating to former Deputy Chief Brian O'Keefe or former Chief Hegerty**

To the extent that the City seeks to exclude the use of any evidence pertaining to Deputy Chief O'Keefe and/or Chief Hegerty, including calling them as witnesses, this motion is denied. To the extent that the City seeks to exclude evidence regarding disciplinary actions towards Officer Glover, this motion is granted because the plaintiffs do not intend to inquire of either witness about disciplinary action in any event.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the motions in limine discussed herein [ECF Nos. 207, 209] are **GRANTED-IN-PART** and **DENIED-IN-PART**.

Dated at Milwaukee, Wisconsin, this 3rd day of October, 2012.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**